# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| BONNIE ALLEN THOMAS, | § | |
| Plaintiff, | § | |
| vs. | § | Civil Action No. 3:17-CV-0348-N-BH |
| | § | |
| THE STATE OF TEXAS, et. al, | § | |
| Defendants. | § | Referred to U.S. Magistrate Judge |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

By *Special Order 3-251*, this *pro se* case has been automatically referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court are the following:

(1) *Defendant Danny Griffith's Motion to Dismiss the First Amended Complaint [F.R.C.P. 12(b)(6)]*, filed March 23, 2017 (doc. 38);

(2) *Defendant Marc Pieroni's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure, Rules 12(b)1() and (6)*, filed April 13, 2017 (doc. 56);

(3) *Plaintiff's Motion to Disqualify Opposing Counsel for Marc Pieron[i]*, filed April 27, 2017 (doc. 64);

(4) *413th District Court Judge William Bosworth, 66th Judicial District Court Judge F.B. McGregor, 18th District Court Judge John Neill, 249th District Court Judge Dennis Wayne Bridewell, and the State of Texas' Motions to Dismiss on the Basis of Official, Qualified, Eleventh Amendment and Judicial Immunity and Absence of Standing*, filed May 3, 2017 (doc. 69);

(5) *Defendants Johnson County, Texas, Bob Alford, Ken Bartlett, Ronald McBroom, Dale Hanna, and Martin Strahan's Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support Thereof*, filed June 2, 2017 (doc. 80); and

(6) *Defendant Greg Gorman's Third Motion to Dismiss Pursuant to Federal Rules of Civil Procedure, Rules 12(b)(1) and (6)*, filed June 2, 2017 (doc. 81).

Based on the relevant filings and applicable law, the motions to dismiss should be **GRANTED**, the plaintiff's remaining claims should be **DISMISSED** *sua sponte* for failure to state a claim, and her motion to disqualify should be **DENIED as moot**.

# I. BACKGROUND

Bonnie Allen Thomas (Plaintiff) initially filed this civil rights action under 42 U.S.C. §§ 1983 and 1985 on February 6, 2017.  (*See* doc. 3.)  She sues the State of Texas (State), Johnson County, Texas (County), former Sheriff Bob Alford (Sheriff), Deputy Sheriff Ken Bartlett (Deputy), alleged confidential informant Daniel Wade Griffith (CI), 413th District Court Judge William Bosworth (Judge Bosworth), 18th District Court Judge John E. Neill (Judge Neill), Municipal Court Judge Ronald McBroom (Judge McBroom), Johnson County District Attorney Dale Hannah (DA), Assistant District Attorney Martin Strahan (ADA), 66th District Court Judge F.B. McGregor (Judge McGregor), 249th District Court Judge Dennis Wayne Bridewell (Judge Bridewell), Marc Pieroni (Ex-husband), his attorney Greg Gorman (Attorney), and John Does 1-5 and Jane Does 1-5 (collectively Defendants). (doc. 79 at 1.)[1]  She claims that she "has been the target of an ongoing conspiracy of ... County officials to persecute and oppress her, and deny her justice in any court in ... County, on any matter, civil or criminal," in retaliation for a wrongful death action she and her siblings filed against County and Sheriff, among others, in 2013.  (*Id*. at 1.)[2]

## A.    <u>Child Custody Proceedings</u>

Plaintiff and her Ex-husband are the parents of three minor children of whom she was initially awarded primary custody.  (*Id*. at 6.)  Ex-husband filed a motion for sole custody of the three children, and in June 2015, sought "emergency relief" based on allegations that Plaintiff had confiscated their son's cell phone and "was beating" him.  (*Id*.)  Plaintiff claims that despite the

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

[2] The lawsuit, which arose from the death of her 69-year-old father while he was incarcerated in the County jail in 2011, was settled in 2016.  (doc. 79 at 1, 4-5.); *see also Allen-Pieroni, et. al. v. Southwestern Correctional, LLC, et. al.*, No. 3:13-CV-04089-M (N.D. Tex.).

responding police officer's conclusion that there had been no spanking, Judge Bridewell "immediately removed all three children from [her] custody" and placed them with Ex-husband "without proper notice and without opportunity to be heard." (*Id.*) He also ordered drug tests, social studies and psychological evaluations for both parents. (*Id.* at 7.) At a subsequent hearing, Judge Bridewell "refused to reverse his temporary order awarding custody" to Ex-husband, whom Plaintiff contends tested positive for drugs, is "an active illegal drug user," and has been investigated by CPS for choking their oldest son. (*Id.* at 7-8.) Judge Bridewell denied her motion to transfer venue but granted her request to recuse himself, and Judge Neill was then assigned to the case. (*Id.* at 8.)

Plaintiff sought an emergency hearing from Judge Neill, who refused to schedule one, and after discovering that he was out of town, she sought one from Judge Bosworth, who denied her request. (*Id.*) Judge Neill held a hearing on August 28, 2015, after which he only modified the temporary child custody orders to allow Plaintiff visitation. (*Id.*) At a second hearing on September 2, 2015, he allegedly verbally ordered the attorneys for the parties to file affidavits stating that their clients had turned over all firearms to their attorneys, but the order was never reduced to writing. (*Id.*) Plaintiff turned over the only firearm she owned at the time to her attorney. (*Id.*) Judge Neill also allegedly refused to schedule a hearing on Plaintiff's "writ of *habeas corpus return of child* under the family code to dissolve the temporary orders granted without due process, and return the children." (*Id.* at 9 (emphasis original).)

Plaintiff also contends that Defendants inflicted serious financial harm on her by forcing her into eight hearings on Judge Bridewell's temporary orders between June and October 2015. (*Id.*)

**B.**   **Criminal Proceedings**

To keep costs down and help her attorney, Plaintiff did extensive factual and legal research.

(*Id.*)  On October 21, 2015, she went to the Guinn Justice Center in Cleburne, Texas, to do legal research.  (*Id.*)  She "forgot she had a small .22 caliber 'purse gun' in her purse" when she went through security.  (*Id.*)  Security officers discovered the gun, and she left to put it in her car.  (*Id.*)  She was arrested while walking to her car and charged with "carrying a gun into a prohibited area, and evading arrest." (*Id.* at 9-10.)  Sheriff ordered her vehicle searched and impounded. (*Id.* at 10.)  Plaintiff claims Judge McBroom refused to set a bond for her, ostensibly because he was involved with other defendants to entrap her, and she was held under the control of Sheriff and another wrongful death defendant in the same jail where her father had been confined.  (*Id.*)  Contrary to a policy that detainees not be held in booking for more than 24 hours, she was kept in booking for six days, and placed in solitary confinement and not allowed to shower for four days.  (*Id.* at 10-11.)

After a second bond hearing before Judge Neill, Plaintiff's husband saw ADA and Attorney outside of the courtroom having an animated conversation about Plaintiff. (*Id.* at 11.)  Attorney was trying to convince ADA that Plaintiff was "mentally unstable" and should be denied bond. (*Id.*) Plaintiff's attorney confronted Attorney about his actions and they got into a heated argument. (*Id.*) ADA argued that Plaintiff should be held without bond until a psychological evaluation had been performed, one was ordered by Judge Neill, and he refused to set bond until it was completed.  (*Id.*)

On her tenth day of confinement, Judge Neill set bond for Plaintiff and "required as a condition of bond that [she] be confined to her home, and . . . wear a GPS locator." (*Id.* at 14.)  He also ordered as a condition of her bond that she not have contact with her children. (*Id.*)  Judge Neill subsequently denied her "writ of *habeas corpus* to amend bond conditions and remove the GPS locator." (*Id.* at 15 (emphasis original).)  Plaintiff appealed the denial of her writ to the Tenth Court of Appeals of Texas, and that court modified her bond conditions to remove the home confinement

requirement.  (*Id*. at 15-16.)

Judge McGregor presided over Plaintiff's criminal trial for carrying a gun into a prohibited area.  (*Id*. at 25.)  She alleges that Judge McGregor refused to grant her motions to transfer venue and motions in limine, and that he allowed prejudicial photographs to be taken of her.  (*Id*.)  She claims that Judge McGregor allowed an unfair trial against her in order to secure a conviction.  (*Id*. at 25-26.) She describes one occasion during the trial in which Judge Neill was permitted to testify regarding the oral "gun-turn-over order" he issued in her child custody case, and she alleges he "used his position and influence to secure a conviction for [her]."  (*Id*. at 26.)  She also claims that Judge McGregor allowed testimony during the sentencing phase from Deputy regarding an alleged entrapment scheme.  (*Id*.)  Plaintiff "hopes for appellate remedy, but such may be years of financial drain and p[h]ysical and emotional drain."  (*Id*.)

C.    **Entrapment Conspiracy**

Plaintiff alleges that Defendants' actions are all part of a conspiracy against her to deprive her of justice in County, and that part of the conspiracy entailed entrapping her into agreeing to hire a "hitman" to murder Ex-husband.  (*Id*. at 1-2, 11-12, 17.)  She claims that her bond was denied during the criminal prosecution in order to hold her "in solitary confinement to break down her mental functioning until a secretly wired (audio and video) confidential informant[, CI,] would approach her to try and convince her to authorize the murder of her ex-husband."  (*Id*. at 10.)

CI, allegedly acting as an agent for the other defendants, visited Plaintiff on her third day in solitary confinement and asked her questions about the charges against her in an "illegal custodial interrogation" that provided valuable information about her defense.  (*Id*. at 12-13.) CI moved the "conversation in the direction of a murder-for-hire scheme."  (*Id*. at 13.)  CI stated that "he had his

own 'crew' who would kill [Ex-husband]" and "offered several options as to how he could kill [Ex-husband], including ways that it could be made to look like an accident." (*Id*.) CI allegedly informed her that Ex-husband's murder would lead to the "hassle-free return of her children" and that she could pay him out of the money she recovered from Ex-husband's life insurance policy. (*Id*.) She claims that she "would not take the bait" and "firmly declined to authorize [CI] to murder [Ex-husband]." (*Id*. at 2, 13.) CI allegedly handwrote a narrative report regarding his "inside-the-jail attempt to entrap [her]" in which he stated that she "enthusiastically assented to the murder-for-hire scheme." (*Id*. at 20-21.)

CI went with Deputy to visit Plaintiff at her home following her release on bond and allegedly tried to convince her to hire Deputy, who CI presented as a "hitman", to murder Ex-husband. (*Id*. at 17.) Deputy typed a narrative report regarding this third attempt to convince Plaintiff to enter into the murder-for-hire scheme. (*Id*. at 20-21.) She contends that the report, although "written to do maximum [damage] to her reputation", admitted that she refused to authorize Ex-husband's murder. (*Id*.) Even though she refused the offer, two months later, her attorney informed her that she was being "'investigated' for a murder-for-hire scheme." (*Id*. at 17-18.) Plaintiff further asserts that Defendants "tried to bootstrap the entrapment scheme" into her wrongful death and child custody cases. (*Id*. at 19.) She describes two child custody hearings in front of Judge McGregor in which the two narrative reports and testimony regarding the alleged entrapment scheme were used to her disadvantage, resulting in orders for child support and supervised visitation against her. (*Id*. at 21-23.)

Plaintiff asserts claims under § 1983 for violation of her constitutional rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, under § 1985

for conspiracy to violate her rights, and under state law for invasion of privacy, defamation, libel, false imprisonment, and intentional infliction of emotional distress.  (*See id*. at 13, 25-26, 28-40.)[3] She also seeks injunctive relief against the judges in their official capacities in the form of an order directing the "state trial court[s] to transfer venue to a county in which Plaintiff can receive a fair trial" in her civil and criminal cases, as well as compensatory and punitive damages against all Defendants.  (*Id*. at 35-36, 40-41.)

All Defendants have moved to dismiss all claims against them under Rule 12(b)(1) for lack of subject-matter jurisdiction and/or Rule 12(b)(6) for failure to state a claim.  (docs. 38; 56; 69; 80; 81.)  The motions are now ripe for determination.[4]

## II. 12(b)(1)

All Defendants, except CI, move for dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction.  (docs. 57 at 1-4; 69 at 2, 31-35, 45-46; 80 at 2, 30; 82 at 1-2, 16-19.)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).  They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum."

---

[3] Although Plaintiff does not specifically allege violations of her Fifth Amendment rights, her second amended complaint repeatedly invokes that amendment.  (*See* doc. 79 at 13, 15, 23, 25-26.)

[4] After Defendants moved to dismiss Plaintiff's first amended complaint, she sought and was granted leave to file her second amended complaint over their opposition.  (*See* docs. 62, 78.)  Defendants were given the option to file new motions to dismiss or to stand on their pending motions, which would be construed as being directed at the second amended complaint.  (*See* doc. 78 at 4-5.)  Although Plaintiff did not file separate responses to any of the motions to dismiss, her second amended complaint appears to contain her response.  (*See* doc. 79 at 27-28, 40.)

*Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

A Rule 12(b)(1) motion "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). A court must dismiss the action if it determines that it lacks jurisdiction over the subject matter. Fed. R. Civ. P. 12(h)(3); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). A dismissal under Rule 12(b)(1) "is not a determination of the merits," and it "does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id*. Accordingly, considering Rule 12(b)(1) motions first "prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *Id*.

A district court may dismiss for lack of subject-matter jurisdiction based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (en banc). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject-matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998). If sufficient, those allegations alone provide jurisdiction. *Id*. Facial attacks are usually made early in the proceedings. *Id*. "A facial attack requires the court merely to decide if the plaintiff has correctly alleged a basis for subject matter jurisdiction" by examining the allegations in the complaint, which are presumed

to be true. *Rodriguez v. Tex. Comm'n on the Arts*, 992 F. Supp. 876, 878 (N.D. Tex. 1998) (citations omitted).

If the defendant supports the motion with evidence, however, then the attack is "factual" and "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson*, 645 F.2d at 413. A factual attack may occur at any stage of the proceedings. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Regardless of the nature of attack, the party asserting federal jurisdiction continually carries the burden of proof to show it exists. *Ramming*, 281 F.3d at 161.

Here, because Defendants rely on Plaintiff's amended complaints, they present a facial attack that does not require the Court to resolve matters outside the pleadings. *See Bridgewater v. Double Diamond–Delaware, Inc.*, No. 3:09–CV–1758–B, 2010 WL 1875617, at *5 (N.D. Tex. May 10, 2010); *Lester v. Lester*, No. 3:06-CV-1357-BH, 2009 WL 3573530, at *4 (N.D. Tex. Oct. 29, 2009).

## A.    Eleventh Amendment Immunity

State moves to dismiss Plaintiff's claims against it and the judges in their official capacities based on Eleventh Amendment immunity. (doc. 69 at 37, 53-54.)[5]

### 1.    State

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United

---

[5] Although the State moves to dismiss under Rule 12(b)(6) for failure to state a claim, Eleventh Amendment immunity has a jurisdictional effect, and "[o]nce a court finds that [it] applies, the barred claims 'can be dismissed only under Rule 12(b)(1) and not with prejudice.'" *Cooper v. Sears*, No. Civ. A. 3:02-CV-0698-R , 2004 WL 515607, at *1 (N.D. Tex. Jan. 9, 2004) (quoting *Warnock v. Pecos Cty., Tex.*, 88 F.3d 341, 342–43 (5th Cir. 1996)); *see also Shah v. Univ. of Tex. Sw. Med. Sch.*, 54 F. Supp. 3d 681, 690 (N.D. Tex. 2014) (dismissing claims that were barred by Eleventh Amendment immunity under Rule 12(b)(1) for lack of subject matter jurisdiction).

States by Citizens of another State, or by Citizens or Subjects of any Foreign State." "This withdrawal of jurisdiction effectively confers an immunity from suit." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). Therefore, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). This immunity applies to both federal and state law claims brought in federal court. *See Raj v. La. State Univ.*, 714 F.3d 322, 328-29 (5th Cir. 2013) (determining that sovereign immunity bars both federal and state law claims brought in federal court); *Roberson v. McShan*, No. 05-20055, 2005 WL 2673516, at *1 (5th Cir. Oct. 20, 2005) (per curiam) (finding that Eleventh Amendment immunity divests federal courts of jurisdiction to hear federal and state law claims).

Although Congress has the power to abrogate that immunity through the Fourteenth Amendment, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–76 (2000), and the State may waive its immunity by consenting to suit, *AT&T Commc'ns v. BellSouth Telecomms. Inc.*, 238 F.3d 636, 643 (5th Cir. 2001), the State has not waived its immunity by consenting to suit, nor has Congress abrogated the Eleventh Amendment immunity by enacting 42 U.S.C. § 1983 or 42 U.S.C. § 1985. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Hines v. Miss. Dep't of Corr.*, No. 00-60143, 2000 WL 1741624, at *3 (5th Cir. Nov. 14, 2000) (per curiam). Additionally, "Congress did not abrogate Eleventh Amendment immunity by granting federal courts supplemental jurisdiction over state law claims in 28 U.S.C. § 1367(a). *Roberson*, 2005 WL 2673516, at *1 (citing *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 541–42 (2002)).

Here, Plaintiff invokes the Texas Tort Claims Act (TTCA) as a waiver of the State's sovereign immunity. (doc. 79 at 30.) *see* Tex. Civ. Prac. & Rem. Code Ann. § 101.025(a). State

argues that the TTCA does not provide a waiver of immunity for intentional tort claims. (doc. 69 at 24 n.19.) The only state law tort claims Plaintiff asserts against State are for false imprisonment and intentional infliction of emotional distress against. (doc. 79 at 37-38.)

The TTCA "provides a limited waiver of sovereign and governmental immunity for certain tort claims, 'allowing suits to be brought against governmental units only in certain, narrowly defined circumstances.'" *Dorward v. Ramirez*, No. 3:09-CV-0018-D, 2009 WL 2777880, at *13 (N.D. Tex. Aug. 28, 2009) (quoting *Tex. Dep't of Crim. J. v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001)). This "waiver of immunity constitutes the 'only . . . avenue for common-law recovery against the government' on a tort theory." *Id.* (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008)). The TTCA's limited waiver of sovereign and governmental immunity for certain tort claims expressly does not apply to claims "arising out of assault, battery, *false imprisonment, or any other intentional tort*," however. Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2) (emphasis added); *see also Dorward*, 2009 WL 2777880, at *13 (citing *Tex. Dep't of Crim. J.*, 51 S.W.3d at 587); *Swiat v. City of Fort Worth*, No. 4:10-CV-354-A, 2011 WL 2559637, at *5 (N.D. Tex. June 28, 2011) (considering the scope of § 101.057(2)); *Jackson v. Sheriff of Ellis Cty.*, 154 F. Supp. 2d 917, 921 (N.D. Tex. 2001) (stating that intentional infliction of emotional distress is an intentional tort). The TTCA does not waive the State's immunity for Plaintiff's intentional tort claims for false imprisonment and intentional infliction of emotional distress.

Eleventh Amendment immunity bars Plaintiff's federal and state law claims against State, and they should be dismissed without prejudice. *See Shah*, 54 F. Supp. 3d at 690.

### 2.    *Judges in their Official Capacities*

Plaintiff specifies that she is suing the judges in their official capacities for injunctive relief.

(doc. 79 at 35.)  She claims that "there is no immunity from [i]njunctive [r]elief" for claims brought under 42 U.S.C. § 1983.  (*Id*. at 19, 36.)  They argue that Plaintiff "does not set out the elements of the exception to Eleventh Amendment immunity" for claims for injunctive relief.  (doc. 69 at 44.)

An official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent.  *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Plaintiff's suit against the state judges in their official capacities is a suit against the State.  *See Florance v. Buchmeyer,* 500 F. Supp. 2d 618, 638–39 (N.D. Tex. 2007); *see also Elie v. Ashford*, No. 3:16-CV-2032-L-BH, 2016 WL 4276009, at *2 (N.D. Tex. July 14, 2016), *adopted by* 2016 WL 4268930 (N.D. Tex. Aug. 15, 2016).

Although Plaintiff's official capacity claims against the judges would normally be barred by Eleventh Amendment immunity, the Supreme Court has created an exception for suits for injunctive or declaratory relief against individual state officials.  *Raj*, 714 F.3d at 328 (citing *Ex parte Young*, 209 U.S. 123, 155–56 (1908)); *see also Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 321–22 (5th Cir. 2008) ("Pursuant to the *Ex Parte Young* exception, the Eleventh Amendment is not a bar to suits for prospective relief against a state employee acting in his official capacity.").  Under this exception, "claims against state officials for prospective injunctive relief under § 1983 . . . are not barred by sovereign immunity."  *Kobaisy v. Univ. of Miss.*, 624 F. App'x 195, 198 (5th Cir. 2015) (citing *Nelson*, 535 F.3d at 324); *see May v. N. Tex. State Hosp.*, 351 F. App'x 879, 880 (5th Cir. 2009) (citing *Aguilar v. Tex. Dep't of Crim. Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998) (stating that the *Ex Parte Young* exception "applies to suits that allege a violation of federal law that are 'brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect.'").

Although the judges assert that Plaintiff has not sufficiently pleaded the *Ex Parte Young* exception, they also specifically recognize that the exception applies "when (1) the suit is against a state official and (2) the plaintiff seeks only prospective injunctive relief (3) in order to end a 'continuing violation of federal law.'" (doc. 69 at 44-45.)[6]  Plaintiff seeks injunctive relief under § 1983 against them in their official capacities in order to "transfer venue to a county in which [she] can receive a fair trial" in her child custody and criminal cases.  (doc. 79 at 35-36.)  She asserts that she "has not, and will never, receive a fair and impartial hearing from the judicial officers of ... County" in violation of her constitutional rights.  (*Id*. at 35.)  Accordingly, her claim fits within the exception.  (*See* doc. 69 at 44-45); *see also May*, 351 F. App'x at 880 (citing *Aguilar*, 160 F.3d at 1054); *Nelson*, 535 F.3d at 321–22.

Because Plaintiff is seeking prospective injunctive relief against the judges in their official capacities under § 1983, Eleventh Amendment immunity does not bar this claim.  *See Griffin v. American Zurich Ins. Co.*, No. 3:14-CV-2470-P, 2016 WL 3361528, at *3 (N.D. Tex. Feb. 24, 2016) (applying *Ex parte Young* to deny dismissal of § 1983 claims for prospective injunctive relief against state officials in their official capacities).

**B.**    ***Younger* Abstention Doctrine**

Defendants move to dismiss for lack of subject matter jurisdiction based on the *Younger*[7]

---

[6] The judges argue that Plaintiff has not alleged the elements of the *Ex Parte Young* exception, which "include irreparable harm, inadequacy of the remedy at law and a showing of likelihood that plaintiff will be subjected to future violations of federal law if injunctive or declaratory relief is not granted." (doc. 69 at 44.)  These elements do not guide application of this exception, however.  *See May*, 351 F. App'x at 880 (citing *Aguilar*, 160 F.3d at 1054) (identifying when the *Ex Parte Young* exception applies).  Rather, they relate to the showing that must be made to warrant injunctive relief.  *See Broad. Music, Inc., v. Tex Border Mgmt., Inc.*, 11 F. Supp. 2d 689, 696–97 (N.D. Tex. 2014) (analyzing a claim for injunctive relief); *Thompson v. Hughes, Watters & Askanase, LLP*, No. 3:13-CV-429-G-BH, 2013 WL 705123, at *2–3 (N.D. Tex. Jan. 31, 2013) (stating and addressing the elements to obtain a preliminary injunction).

[7] The *Younger* abstention doctrine takes its name from the Supreme Court case of *Younger v. Harris*, 401 U.S. 37 (1971).

abstention doctrine.  (docs. 57 at 2-3; 69 at 2, 32-34; 80 at 2, 30; 82 at 16-17.)

Under the *Younger* abstention doctrine, "federal courts must[]refrain from considering requests for injunctive relief based upon constitutional challenges to state criminal proceedings pending at the time the federal action is instituted." *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 518 (5th Cir. 2004) (citing cases); *Wightman–Cervantes v. Tex.*, No. 3:03–CV–3025–D, 2004 WL 2512208, at *2 (N.D. Tex. Nov. 5, 2004) (citing *Younger*, 401 U.S. at 54).  The *Younger* abstention doctrine does not apply to claims for monetary relief. *See Saloom v. Tex. Dept. Of Family and Child Protective Servs.*, 578 F. App'x 426, 429 (5th Cir. 2014) (stating that "requests for monetary damages do not fall within the purview of the *Younger* abstention doctrine"). "While it was once thought that *Younger* applied only to state criminal or 'quasi-criminal' proceedings, the [Supreme] Court has now made it clear that '[t]he policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved.'" *Women's Cmty. Health Ctr. of Beaumont, Inc. v. Tex. Health Facilities Comm'n*, 685 F.2d 974, 978–79 (5th Cir. 1982) (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).  Three conditions must be met for the doctrine to apply: "(1) the dispute must involve an 'ongoing state judicial proceeding;' (2) an important state interest in the subject matter of the proceeding must be implicated; and (3) the state proceeding must afford an adequate opportunity to raise constitutional challenges." *Wightman–Cervantes*, 2004 WL 2512208, at *2 (citing *Wightman v. Tex. Supreme Court*, 84 F.3d 188, 189 (5th Cir. 1996)).[8]

_____

[8] Because Plaintiff seeks injunctive relief only against the judges in their official capacities, the *Younger* abstention doctrine does not apply to the remaining defendants against whom she seeks only monetary relief.  (*See* doc. 79 at 35.)  It is therefore unnecessary to address their motions to dismiss on this basis.  (*See* docs. 57 at 2-3; 82 at 16-17.)

### 1.    Ongoing State Judicial Proceeding

To determine if a "dispute involves an 'ongoing state judicial proceeding,' the point of reference is the date suit was filed." *Wightman-Cervantes v. Tex.*, No. 3:03-CV-3025-D, 2005 WL 770598, at *3 (N.D. Tex. Apr. 6, 2005) (quoting *DeSpain v. Johnston*, 731 F.2d 1171, 1178 (5th Cir. 1984)). "Additionally, '[t]he state interest that is triggered by the institution of the state proceeding continues through the completion of the state appeals process,' and, as a result, 'the Younger doctrine requires that federal courts abstain when a state proceeding is pending and the state appellate procedure has not been exhausted.'" *Id.* at *3.

As noted, Plaintiff is seeking injunctive relief to transfer her child custody and criminal cases to a different county. (doc. 79 at 35-36.) She filed her original complaint on February 6, 2017, and her most current complaint alleges that her criminal proceedings and/or appeals were ongoing in March of 2017. (*See* docs. 3; 79 at 25-26, 35-36.) She also appears to allege that her child custody proceedings are ongoing, claiming that she "has not, and will never, receive a fair and impartial hearing from the judicial officers of [County] on her family law matters." (doc. 79 at 35-36.) The first condition is met.

### 2.    Important State Interest

Family law and child custody matters implicate important state interests. *See Shipula v. Tex. Dep't of Family Protective Servs.*, No. H-10-3688, 2011 WL 1882521, at *9 (S.D. Tex. May 17, 2011) (citing *Moore v. Sims*, 442 U.S. 415, 434 (1979)) ("family and child custody are important state interests as a matter of law"). The criminal proceedings also implicate an important state interest because "[t]he state has a strong interest in enforcing its criminal laws." *Wightman-Cervantes*, 2005 WL 770598, at *4 (quoting *DeSpain*, 731 F.2d at 1176). The second condition is

15

also met.

### 3.    *Opportunity to Raise Constitutional Challenges*

As for the third condition, federal courts "should assume that state court procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987).  To overcome this assumption, "the federal plaintiff must show that he had no opportunity to litigate the federal issue in state court." *Wightman-Cervantes v. Texas*, 2005 WL 770598, at *4 (quoting *DeSpain*, 731 F.2d at 1178).

Here, Plaintiff "has not alleged any facts showing that she was barred from raising her constitutional concerns in the state court proceedings." *Shipula*, 2011 WL 1882521, at *9.  The fact that she has been unsuccessful in transferring venue in her child custody case and in her criminal prosecution for carrying a gun into a prohibited area does not mean that she has not had "an adequate opportunity to raise [her] constitutional challenges." *Beasley v. Krafcisin*, No. 3:13-CV-4972-M-BF, 2014 WL 4651996, at *2 (N.D. Tex. Sept. 17, 2014).  To the extent she believes she will not receive a fair trial in County, she has an adequate remedy at law because she may raise her constitutional concerns on direct appeal.  *See Childress v. Watkins*, No. 5:14-CV-748-DAE, 2014 WL 4274311, at *3 (W.D. Tex. Aug. 28, 2014) (finding that "state proceedings, which include the appeal process, are adequate to redress any alleged constitutional deprivation").  Because Plaintiff has failed to show that she "had no opportunity to litigate the federal issue in state court," and she has an adequate remedy at law, the third condition is met.

### 4.    *Bad Faith Exception*

Although not expressly raised, Plaintiff's allegations of retaliation based for her prior lawsuit against County and Sheriff may be liberally construed as invoking the bad faith exception to the

*Younger* abstention doctrine. (*See* doc. 79 at 28-29, 30, 39.)

"The Fifth Circuit has applied the bad faith exception in 'two major circumstances': first, when a state commences a prosecution or proceeding to retaliate for or to deter constitutionally protected conduct; and second, when the prosecution or proceeding is taken in bad faith or for the purpose to harass." *All American Check Cashing, Inc. v. Corley*, 191 F. Supp. 3d 646, 660 (S.D. Miss. 2016) (citations omitted) (citing cases). If the exception applies, a federal court must abstain from entering an injunction "unless the movant pleads and proves bad faith, harassment, or other exceptional circumstances . . . ." *Wightman–Cervantes*, 2004 WL 2512208, at *2 (citing *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 87 (5th Cir. 1992)). The "'bad faith' exception is narrow and should be granted parsimoniously." *Hefner v. Alexander*, 779 F.2d 277, 280 (5th Cir. 1985). The plaintiff "has the burden of showing that the exception applies." *Wightman-Cervantes*, 2005 WL 770598, at *5 (citing *Stewart v. Dameron*, 460 F.2d 278, 279 (5th Cir. 1972)). The bad faith exception applies where:

> (1) the plaintiff establishes that the conduct allegedly retaliated against or sought to be deterred was constitutionally protected, and that the state's bringing of the criminal prosecution was motivated, at least in part, by a purpose to retaliate for or to deter that conduct; and (2) the state fails to show by a preponderance of the evidence that it would have decided to prosecute even had the impermissible purpose not been considered.

*Jordan v. Reis*, 169 F. Supp. 2d 664, 669 (S.D. Tex. 2001) (citing *Wilson v. Thompson*, 593 F.2d 1375, 1382–83 (5th Cir. 1979)).

Here, Plaintiff has not alleged that either State or its employees initiated the child custody proceedings. (*See* doc. 79 at 6.) *see also Machetta v. Moren*, No. 4:16-CV-2377, 2017 WL 2805192, at *4 n.9 (S.D. Tex. Apr. 13, 2017) (noting that the bad faith exception applies "when state prosecutions were undertaken in bad faith or to harass"); *All American Check Cashing, Inc.*, 191 F.

Supp. 3d at 660–62 (stating that the bad faith exception applies where a state commences the action); *Jordan*, 169 F. Supp. 2d at 668 ("This well carved out exception derives from the notion that a state does not have a legitimate interest in pursuing bad faith prosecutions"); *see also Wightman–Cervantes*, 2004 WL 2512208, at *2 ("federal court must abstain from enjoining . . . a state criminal proceeding unless the movant . . . proves bad faith, harassment, or other exceptional circumstances"). Rather, Plaintiff's children were removed from her only after Ex-husband filed a motion for "emergency relief." (doc. 79 at 6.) Plaintiff has not met her burden to show that the bad faith exception applies because she makes only conclusory and speculative allegations that part of the retaliation against her included a "conspiracy to take away her children for no reason, and with no evidence." (*Id.* at 1-2, 39.) *see Wightman-Cervantes*, 2005 WL 770598, at *5 (citing *Stewart*, 460 F.2d at 279) (recognizing the burden is on the plaintiff to establish that the bad faith exception applies).

Regarding her criminal case, Plaintiff asserts that DA and ADA filed a criminal action against her for carrying a gun into a prohibited area "at the urging of the Defendant judges" in retaliation for exercising her constitutional right to sue County for the wrongful death of her father, as evidenced by the "inexplicable judicial rulings against her." (doc. 79 at 24, 28-29.) She claims that Judge McGregor, who presided over the criminal case, refused to recuse, transfer venue, or grant her motion limine; allowed improper evidence and testimony; and issued an order prohibiting her from visiting the County courthouse where she does her legal research. (*Id.* at 24-27.)

Plaintiff's filing of the prior civil lawsuit against County for the allegedly wrongful death of her father was constitutionally protected conduct. *See Wilson*, 593 F.2d at 1387 ("It is by now well established that access to the courts is protected by the First Amendment right to petition for

redress of grievances"). She has not, however, alleged sufficient facts to show that her subsequent prosecution was "instituted and conducted . . . to retaliate for or *to deter constitutionally protected conduct . . . .*" *All American Check Cashing, Inc.*, 191 F. Supp. 3d at 660 (emphasis in original); *see also Fitzgerald v. Peek*, 636 F.2d 943, 945 (5th Cir. 1981) (per curiam) (the bad faith exception applies "if the plaintiff establishes that the conduct allegedly retaliated against or sought to be deterred is constitutionally protected and that the state's bringing of the criminal prosecution is motivated at least in part by a purpose to retaliate against or deter that conduct"). Plaintiff offers only speculation that the judges' actions in her criminal prosecution were for the purpose of retaliating against her. *See id*. at 662; *Wightman-Cervantes*, 2004 WL 2512208, at *3-4 (declining to apply the bad faith exception where the plaintiff failed to plead facts in support of his conclusory allegations regarding the actions of a judge and prosecutor); *compare Jordan*, 169 F. Supp. 2d at 669 (finding that the defendant was motivated to retaliate against the plaintiff's constitutionally protected right where (1) the defendant relied on testimony of two felony inmates to procure an indictment, and (2) the county attorneys offered to dismiss the plaintiff's criminal case if he would drop his civil case against the county and sheriff). Her complaint concedes that she carried a gun into a prohibited place, and her indictment and subsequent conviction weigh against a determination that she was prosecuted "with no hope of obtaining a valid conviction." *See Jordan*, 169 F. Supp. 2d at 669 (finding that "whether the state prosecution was undertaken with no hope of obtaining a valid conviction" is relevant to determining if the bad faith exception applies). Accordingly, the allegations in Plaintiff's second amended complaint do not support application of the bad faith exception to permit her to seek injunctive relief in her criminal proceeding.

       Plaintiff's claim for injunctive relief against the judges should be dismissed without

prejudice for lack of subject matter jurisdiction under the *Younger* abstention doctrine.[9]

**C.    *Rooker-Feldman***

Several Defendants also contend that subject matter jurisdiction is lacking based on the *Rooker-Feldman*[10] doctrine because Plaintiff's federal "claims are 'enmeshed' and 'inextricably intertwined' with the underlying criminal and domestic relations" cases, which are exclusively state concerns.  (docs. 69 at 45; 82 at 16, 18.)  They assert that Plaintiff's only available "course of action is to present her alleged claims . . . in the Texas criminal and child custody proceeding[s] . . . and to appeal any adverse rulings" from those proceedings through "Texas appellate courts and ultimately the United States Supreme Court."  (doc. 82 at 18.)[11]

The *Rooker-Feldman* doctrine divests federal district courts of jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 281 (2005). "[F]ederal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts."  *See Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000) (quoting *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994)).  Under 28 U.S.C. §

---

[9] Because Plaintiff's request for injunctive relief is subject to dismissal under *Younger*, the defendant judges' remaining arguments that she lacks standing to seek injunctive relief and/or does not establish the necessary elements to obtain injunctive relief are not addressed. (*See* docs. 69 at 43-45, 59-64; 80 at 34.)

[10] The *Rooker–Feldman* doctrine takes its name from two Supreme Court decisions, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

[11] Although not all Defendants moved to dismiss based on the *Rooker–Feldman* doctrine, it is a jurisdictional doctrine that may be raised *sua sponte*. *See Holleman v. West End Cab Co.*, No. 3:01–CV–1166–R, 2001 WL 1295520, at *1 (N.D. Tex. Oct. 9, 2001); *see also Burge v. Parish of St. Tammany*, 187 F.3d 452, 465–66 (5th Cir. 1999).  A district court has "the responsibility to consider the question of subject matter jurisdiction *sua sponte* if it is not raised by the parties."  *Giannakos v. M/V Bravo Trader*, 762 F.2d 1295, 1297 (5th Cir. 1985).  If the court finds that it lacks subject matter jurisdiction, it has a duty to dismiss the case.  *Id.*; Fed. R. Civ. P. 12(h)(3).

1257, only the United States Supreme Court has exclusive jurisdiction to review final judgments or decrees entered by the highest court of a state.  Accordingly, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights."  *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994).

A "state court judgment is attacked for purposes of *Rooker-Feldman* 'when the [federal] claims are inextricably intertwined with a challenged state court judgment.'"  *Weaver v. Tex. Capital Bank, N.A.*, 660 F.3d 900, 904 (5th Cir. 2011) (per curiam) (citations and internal quotation marks omitted).  *Rooker-Feldman* "does not preclude federal jurisdiction over an 'independent claim,' even 'one that denies a legal conclusion that a state court has reached [,]'" however.  *Id*. (quoting *Exxon Mobil Corp*, 544 U.S. at 293); *accord Avdeef v. Royal Bank of Scotland, P.L.C.*, 616 F. App'x 665, 673 (5th Cir. 2015) (per curiam).  The doctrine "generally applies only where a plaintiff seeks relief that directly attacks the validity of an existing state court judgment."  *Weaver*, 660 F.3d at 904 (emphasis added).  Nonetheless, a party cannot escape *Rooker-Feldman* by "casting . . . a complaint in the form of a civil rights action."  *Liedtke*, 18 F.3d at 317 (citing cases).

Plaintiff sues under §§ 1983 and 1985 and state law, alleging that Defendants discriminated against her in her child custody case to confiscate her children, put her through many hearings to drain her finances, denied her bond, denied her right to counsel, placed her in solitary confinement, attempted to entrap her, invaded her privacy by producing false and defamatory documents against her regarding the entrapment scheme, and violated criminal statutes to leak the false and defamatory documents in retaliation against her for exercising her right to sue County and Sheriff.  (doc. 79 at 28-30, 32-37, 39-40.)  She does not seek review or rejection of the state courts' judgments in her

21

civil or criminal proceedings. Rather, she challenges Defendants' alleged actions before and during those proceedings. (*See* doc. 79 at 6, 10-13, 17-18.) As for her allegations that Defendants produced and offered false and defamatory documents against her in state court, "claims that private parties misled the state court are not barred by the *Rooker-Feldman* doctrine." (*Id.* at 19, 21, 23, 26.) *Saloom*, 578 F. App'x at 429. "Moreover, . . . [Plaintiff] seeks damages for injuries caused by [Defendants]' actions, rather than by the state court judgment, which is demonstrated by her emphasis on [Defendants]' actions rather than the state court judgment." (doc. 79 at 41.) *Saloom*, 578 F. App'x at 429. Plaintiff's "lawsuit is not barred simply because [Defendants'] actions allegedly led to the state court judgment[s]." *Saloom*, 578 F. App'x at 429 (citing *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382–84 (5th Cir. 2013)). Accordingly, her claims are not barred by the *Rooker-Feldman* doctrine.

Because Plaintiff has alleged various independent constitutional and state law claims for monetary damages that were not considered by the state courts, the *Rooker-Feldman* doctrine does not divest this Court of subject matter jurisdiction over them.

## D.    Domestic Relations Exception

Several Defendants move to dismiss Plaintiff's constitutional claims for lack of subject matter jurisdiction under the domestic relations exception. (docs. 57 at 2-4; 69 at 35; 82 at 16-18.)

"The domestic relations exception does not apply to the court's consideration of federal question jurisdiction." *Smith v. Tisdale*, No. 3:09-CV-1165-D, 2009 WL 3163541, at *4 n.6 (N.D. Tex. Sept. 30, 2009). Rather, it is an exception to diversity jurisdiction. *See Goins v. Goins*, 777 F.2d 1059, 1062–63 (5th Cir. 1985) (recognizing the domestic relations exception to federal diversity jurisdiction); *Shipula v. Tex. Dep't of Fam. & Protective Servs.*, No. H-10-3668, 2011 WL

22

1882521, at *16 n.50 (S.D. Tex. May 20, 2011) (citing *Smith*, 2009 WL 3163541, at *4 and n.6) (recognizing that the domestic relations exception is only applicable in diversity jurisdiction cases). The exception is inapplicable in this federal question case, and Defendants' motions to dismiss on this basis should be denied. *See Shipula*, 2011 WL 1882521, at *16 n.50.

### III. 12(b)(6)

Defendants move to dismiss Plaintiff's claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (*See* docs. 39 at 1; 57 at 1, 4; 69 at 2, 35-36; 80 at 11; 82 at 1-2, 19.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). Nonetheless, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," however. *Id.* at 555; *accord Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion. *Spivey*, 197 F.3d at 774; *Baker*, 75 F.3d at 196. When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, a court has "complete discretion" to either accept or exclude the evidence for purposes of determining the motion. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 n.3 (5th Cir. 1988); *accord Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 783 (5th Cir. 2007). "If . . . matters outside the pleading[s] are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). For purposes of a Rule 12(b)(6) motion, "pleadings" include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Similarly,

24

documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir. 2003). It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). Documents falling in these three categories may be properly considered without converting the motion to dismiss into a motion for summary judgment.

Several Defendants attached case law in support of their arguments. (*See* doc. 69 at 75-115.) These cases are not attached to Plaintiff's second amended complaint, and although they are not referred to in her complaint nor central to her claims, they may be judicially noticed because they are matters of public record, and their contents cannot reasonably be disputed. *See Norris*, 500 F.3d at 461 n.9; *Matter of Manges*, 29 F.3d 1034, 1042 (5th Cir. 1994) (taking judicial notice of "unimpeached certified copies of . . . deeds and assignments"); *see also* Fed. R. Evid. 201(b)(2) (a court may take judicial notice of a fact when it "can be accurately and readily determined from sources whose accuracy cannot reasonably be disputed"). Accordingly, it is unnecessary to convert Defendants' motion to dismiss into a motion for summary judgment.

## A.    <u>Absolute Immunity</u>

The judges and prosecutors move to dismiss all claims against them based on absolute immunity.

### 1.    *Judicial Immunity*

The judges contend that all claims against them should be dismissed based on the doctrine of judicial immunity. (docs. 69 at 18, 37-42; 80 at 20-21.)

The Supreme Court has recognized absolute immunity for judges acting in the performance of their judicial duties. *See Nixon v. Fitzgerald*, 457 U.S. 731, 745–46 (1982). Judges are immune from suit for damages resulting from any judicial act. *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). Allegations of bad faith or malice do not overcome judicial immunity. *Id*. at 11. A plaintiff can overcome the bar of judicial immunity only under two very limited circumstances. *See Mireles*, 502 U.S. at 11–12; *see also Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994). First, a judge is not immune from suit for actions that are not "judicial" in nature. *See Mireles*, 502 U.S. at 11. "[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Davis v. Tarrant County, Tex.*, 565 F.3d 214, 222 (5th Cir. 2009) (quoting *Mireles*, 502 U.S. at 12). "[T]he relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.' In other words, [a court should] look to the particular act's relation to a general function normally performed by a judge . . . ." *Id*.

> [The Fifth Circuit] has adopted a four-factor test for determining whether a judge's actions were judicial in nature: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity. These factors are broadly construed in favor of immunity.

*Davis*, 565 F.3d at 222–23 (citations omitted). "The absence of one or more factors will not prevent a determination that judicial immunity applies." *Carter v. Carter*, No. 3:13-CV-2939-D (BF), 2014 WL 803638, at *1 (N.D. Tex. Feb. 20, 2014) (citing *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005)). Second, a judge is not immune from suit for actions that although judicial in nature, are taken in the complete absence of all jurisdiction. *See Mireles*, 502 U.S. at 12; *see also Malina v.*

*Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993).

"Texas courts employ the same judicial immunity analysis as the federal courts in this Circuit . . . ." *Durrance v. McFarling*, No. 4:08-CV-289, 2009 WL 1577995, at *3 (E.D. Tex. June 4, 2009) (citing *Hawkins v. Walvoord*, 25 S.W.3d 882, 890 (Tex. App.—El Paso 2000, pet. denied)); *see Sharp v. Palmisano*, No. 16-5429, 2013 WL 5969661, at *4 (E.D. La. Nov. 8, 2013) (citing *Hawkins*, 25 S.W.3d at 890) (recognizing that Texas' judicial immunity principles mirror the federal judicial immunity doctrine). Accordingly, to the extent the judges are immune from Plaintiff's federal claims, they are also immune from her state law claims.

### a.    Judge Bridewell

Judge Bridewell was involved in the early stages of Plaintiff's child custody case. (doc. 79 at 6-7.) After Ex-husband filed a motion for sole custody of the children, he allegedly removed all three children from her custody "without proper notice and without an opportunity to be heard;" ordered drug tests, social studies, and psychological evaluations for all parents; and refused to reverse his temporary child custody order. (*Id.* at 6-7.)

Plaintiff's claims against Judge Bridewell are based on actions that are "normally performed by a judge," and she specifically alleges that she was dealing "with the judge in his judicial capacity." *See Liptak v. Banner*, No. 3:01-CV-0953-M, 2002 WL 378440, at *2 (N.D. Tex. Mar. 7, 2002) (citing *Mireles*, 502 U.S. at 11–12). Because Judge Bridewell was acting in the performance of his judicial duties in committing the alleged acts, Plaintiff's federal and state law claims against him in his individual capacity are barred by judicial immunity.

### b.    Judge McBroom

Judge McBroom was involved in the early stages of the criminal case against Plaintiff for

carrying a gun into a prohibited area. (doc. 79 at 10.) She claims that he refused to set her bond at the initial hearing following her arrest. (*Id*.) This duty is "normally performed by a judge," and Plaintiff's allegations show that she was dealing with Judge McBroom in his judicial capacity. *See Liptak*, 2002 WL 378440, at *2 (citing *Mireles*, 502 U.S. at 11–12). She also claims that Judge McBroom was involved in the alleged conspiracy against her, but she makes no specific allegations regarding his involvement and does not allege that he acted outside the scope of his judicial duties or without jurisdiction. (*See* doc. 79. at 10, 12, 17.); *see also Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 636 (N.D. Tex. 2007). "The fact that it is alleged that the judge acted pursuant to a conspiracy . . . is not sufficient to avoid absolute judicial immunity." *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991). Plaintiff's federal and state law claims against Judge McBroom in his individual capacity are barred by judicial immunity.

### c.    Judge McGregor

Plaintiff's claims against Judge McGregor arise from judicial actions taken during her child custody and criminal cases. (doc. 79 at 19-20, 25.) She complains of the following actions in her child custody case: (1) refusing to grant a continuance to allow her to retain counsel; (2) allowing a narrative report and testimony regarding the alleged entrapment scheme into evidence; (3) ordering her to make monthly payments to Ex-husband and pay for drug testing that she requested for Ex-husband and his girlfriend, (4) allowing testimony from a police officer regarding the items found in the search of her vehicle and from a psychologist who was to diagnose and analyze her; and (5) ordering that she have supervised visitation with her children and that she pay for each visit. (*Id*. at 20-23.) In her criminal case, Judge McGregor allegedly: (1) refused to grant her motions to transfer venue; (2) refused to recuse himself on her motion; (3) refused to grant her motions in

28

limine; (4) allowed testimony from Judge Neill regarding the "gun-turn-over order" he entered; (5) allowed testimony from Deputy regarding the alleged entrapment scheme; and (6) prohibited her from visiting the courthouse where she conducts her research. (*Id*. at 25-27.)

Plaintiff's allegations against Judge McGregor arise from acts in his capacity as a judge that are "normal judicial functions" and which occurred in court during Plaintiff's pending cases. *See Davis*, 565 F.3d at 222–23. She makes no specific allegation that Judge McGregor acted outside the scope of his judicial duties or without jurisdiction. Plaintiff's federal and state law claims against Judge McGregor in his individual capacity are therefore barred by judicial immunity.

### D.    Judge Neill

Plaintiff's claims against Judge Neill arise out of her child custody and criminal cases. (*See* doc. 79 at 8-9, 11, 13-14.) She contends that in her child custody case, he: (1) refused to set an emergency hearing; (2) modified, instead of reversing, the temporary child custody orders; (3) verbally ordered that the parties turn over their guns to their attorneys; and (4) refused to schedule a hearing on her "writ of *habeas corpus return of child*" in violation of the Texas Code of Judicial Conduct. (*Id*. at 8-9.) In her criminal case, she alleges that he initially denied her bond but granted her one ten days later conditioned upon home confinement, a GPS tracker, and no contact with her children. (*Id*. at 11, 13-14.) She then petitioned for a writ of habeas corpus to amend the bond conditions, but Judge Neill "refused to modify his order", and she asserts he lacked subject matter jurisdiction to do so. (*Id*. at 15.)

Plaintiff does not allege that Judge Neill acted outside the scope of his judicial duties in conducting these actions. *See Florance*, 500 F. Supp. 2d at 636. Holding hearings and setting bond are actions normally performed by judges in their judicial capacities and are therefore protected by

judicial immunity. *See Liptak*, 2002 WL 378440, at *2 (citing *Mireles*, 502 U.S. at 11–12); *see also*

*Morrison v. Walker*, 704 F. App'x 369, 375 (5th Cir. 2017) (finding that holding a hearing is normal

judicial function); *Thompson v. Duke*, 882 F.2d 1180, 1184 (7th Cir. 1989) (determining that

scheduling a case for hearing is a judicial function); *Chachere v. Houston Police Dept.*, No. H-05-

3187, 2006 WL 3391443, at *4 (W.D. Tex. Nov. 21, 2006) (finding that a judge is immune from

liability for refusing to set bond). Plaintiff's claim that Judge Neill lacked subject matter jurisdiction

to refuse to modify the bond order because he was punishing her without an adjudication of guilt

is conclusory and speculative. He was acting in his judicial capacity in refusing to modify the order.

"[J]udicial immunity is not overcome by allegations of bad faith or malice . . . ." *Mireles*, 502 U.S.

at 11. Judge Neill is entitled to judicial immunity from Plaintiff's federal and state law claims

against him in his individual capacity based on actions taken in his capacity as a judge in her cases.

### e.    Judge Bosworth

Plaintiff claims that Judge Bosworth refused to set an emergency hearing in her child custody

case, made a "court incident report" following her arrest that allegedly contained defamatory

statements that she was "possibly sociopathic or psychopathic", and held her without bond for

twelve days. (doc. 79 at 8, 30.) Refusing to set an emergency hearing and holding her without bond

were within the scope of his judicial duties, and Plaintiff does not assert otherwise. Although she

claims that the "court incident report" was an administrative document containing defamatory

statements and was therefore not protected by judicial immunity, the report was made regarding

Plaintiff's pending criminal case following her arrest for carrying a gun into a prohibited area. (*Id.*

at 30.) Her statement that this act was "administrative does not make [it] so." *Odeh v. Mitchell*,

No. 4:07-CV-0411-L, 2008 WL 4387082, at *3 (N.D. Tex. Sept. 25, 2008). The Fifth Circuit's four-

factor test supports a finding that this action was judicial in nature. *See Davis*, 565 F.3d at 222–23 (stating the four-factor test). To the extent she claims these acts were conducted in furtherance of the alleged conspiracy against her, Judge Bosworth retains judicial immunity. *See Mitchell*, 944 F.2d at 230 (quoting *Johnson v. Kegans*, 870 F.2d 992, 995 (5th Cir.), *cert. denied*, 492 U.S. 921 (1989)) ("The judge is absolutely immune for all judicial acts 'not performed in clear absence of all jurisdiction, however erroneous the act and however evil the motive.'").

She also alleges that Judge Bosworth engaged in a non-judicial act when he had a "private, after-business-hours meeting" in his chambers with his close friend, CI, and conspired to entrap her. (doc. 79 at 10, 12.) She claims that Sheriff testified that Judge Bosworth and CI met, and CI then "approached [Sheriff] to plan the entrapment scheme." (*Id*. at 12.) Conspiring to entrap an individual would not be a "normal judicial function." *See Crowe v. Lucas*, 595 F.2d 985, 990 (5th Cir. 1979) (finding that conspiring to deprive an individual of his civil rights is not a judicial act). According to the complaint, this alleged meeting was not "centered around a case pending before the court." (*See* doc. 79 at 12.) Plaintiff seems to contend that the meeting did not arise "directly out of a visit to [Judge Bosworth] in his official capacity" because he and CI were "close friends" and met in a "private, after-business-hours meeting." (*Id*.) *See Davis*, 565 F.3d at 222–23. She has sufficiently pleaded facts to support her allegation of non-judicial conduct that would not be protected by immunity.

Plaintiff's federal and state law claims against Judge Bosworth his individual capacity based on his actions in her child custody case are barred by judicial immunity.

In conclusion, Plaintiff's federal and state law claims against all of the judges in their individual capacities, except her claims against Judge Bosworth based on his alleged meeting with

CI, should be dismissed for failure to state a claim because they are immune from suit.[12] *See Nalls v. LaSalle*, 568 F. App'x 303, 304–05, 307 (5th Cir. 2014) (affirming the district court's dismissal of the plaintiff's § 1983 claims for failure to state a claim based on judicial immunity).

### 2.    Witness Immunity

Judge Neill asserts that his participation as a witness in Plaintiff's criminal trial may not form the basis of a civil suit against him.  (doc. 69 at 23 n.15.)

It is well-established that "a trial witness has absolute immunity with respect to any claim based on the witness' testimony."  *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012) (citing *Briscoe v. LaHue*, 460 U.S. 325, 332–33 (1983)).  Texas courts also recognize that witnesses have absolute immunity "from subsequent liability for their testimony in judicial proceedings . . . ."  *McIntyre v. Wilson*, 50 S.W.3d 674, 682 (Tex. App.—Dallas 2001, pet. denied) (citing cases); *see In re Hinterlong*, 109 S.W.3d 611, 635 (Tex. App.—Fort Worth 2003, orig. proceeding [mand. denied]) (citing *Briscoe*, 460 U.S. at 331–35) ("The absolute immunity of parties and witnesses from subsequent liability for their testimony in judicial proceedings is well established at common law.").

Here, Plaintiff alleges that Judge Neill committed a non-judicial act that is not protected by immunity by testifying in her criminal case regarding the "gun-turn-over order" he issued in her child custody case.  (doc. 79 at 26.)  She claims that he had no firsthand knowledge to testify and "used his position and influence to secure a conviction for [her]."  (*Id.*)  Even assuming, without deciding, that Judge Neill's testimony in her criminal trial about his "gun-turn-over order" was not a judicial action protected by judicial immunity, any claims against him in his individual capacity

---

[12] The judges assert that Plaintiff cannot rely on the Texas Code of Judicial Conduct as a basis for a civil suit against them.  (doc. 69 at 2, 26.)  It is well-established that the Code does not create private cause of action for civil liability.  *See Howell v. Hecht*, 821 S.W.2d 627, 632 (Tex. App.—Dallas 1991, writ denied).  To the extent that Plaintiff asserts claims under the Code, those claims should also be dismissed for failure to state a claim.

based on his testimony fail because he has absolute immunity. *See Raju v. Boylen*, No. 3:04CV809LN, 2005 WL 1362960, at *3–5 (S.D. Miss. June 3, 2005), *aff'd*, 169 F. App'x 382 (5th Cir. 2006) (granting a 12(b)(6) motion to dismiss for failure to state a claim based on absolute immunity for a witness).

### 3. Prosecutorial Immunity

DA and ADA assert that all claims against them should be dismissed because they "are absolutely immune from liability arising from decisions made, and conduct taken, during the prosecutorial process." (doc. 80 at 18-19.)[13]

Prosecutors enjoy absolute immunity to initiate and pursue criminal prosecutions. *See Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976). This immunity extends to municipal prosecutors. *Melton v. Frank*, 114 F.3d 1184 (5th Cir. 1997) (holding that municipal prosecutors are entitled to absolute prosecutorial immunity from § 1983 damage claims) (unpublished); *see also Smith v. Connick*, No. 13-52, 2014 WL 585616, at *1-4 (E.D. La. Feb. 14, 2014) (finding that municipal prosecutors are immune from claims under 42 U.S.C. 1983, 1985, and 1988). Prosecutors are entitled to absolute immunity for acts taken to initiate prosecution, even against allegations that they acted "maliciously, wantonly, or negligently." *Rykers v. Alford*, 832 F.2d 895, 897 (5th Cir. 1987)

---

[13] DA and ADA assert that Plaintiff appears to be suing them in their individual capacities. (doc. 80 at 18 n.4.) Federal courts look to the substance of Plaintiff's § 1983 claims to determine if a defendant is sued in an individual or official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Dillon v. Jefferson Cty. Sheriff's Dep't*, 973 F. Supp. 628, 631 (E.D. Tex. 1997). When the complaint is unclear as to whether the defendants are being sued in their individual or official capacities, "the Court must look to the substance of the claims, the relief sought, and the course of the proceedings to determine in which capacity the defendant is sued." *Hopkins v. Guzman*, No. 06-5022, 2007 WL 24072747 at *4 (E.D. La. Aug. 17, 2007) (citing *United States ex rel. Adrian v. Regents of Univ. of Ca.*, 363 F.3d 398, 402–03 (5th Cir. 2000)). Except for her claim for injunctive relief, Plaintiff does not specify the capacity in which she sues Defendants. (*See* doc. 79.) Based on her specific allegations against each individual and her requested relief, it appears that she sues Defendants in their individual capacities. *See Thomas v. Dallas Hous. Auth.*, No. 3:14-CV-4530-B-BN, 2015 WL 2192785, at *5 (N.D. Tex. May 11, 2015) (factoring in the plaintiff's request for compensatory damages in determining the suit was an individual capacity suit); *Dillon*, 973 F. Supp. at 631 (stating that factors such as the defendant's name, unlawful conduct, and relief sought are used in determining whether the suit was an official or individual capacity suit).

(citing *Morrison v. City of Baton Rouge*, 761 F.2d 242, 248 (5th Cir. 1985)). Prosecutors are entitled to the same absolute immunity under Texas law. *See Crotts v. Healey*, No. 01-15-00076-CV, 2015 WL 5890103, at *2–3 (Tex. App.—Houston [1st Dist.] Oct. 8, 2015, pet. denied) (mem. op.) ("Texas courts follow federal jurisprudence" when determining if a prosecutor is entitled to immunity); *Charleston v. Allen*, 420 S.W.3d 134, 136–38 (Tex. App.—Texarkana 2012, no pet.) (stating that prosecutors are entitled to absolute immunity "from civil liability even if the prosecutor acts maliciously.").

Plaintiff alleges that DA and ADA have prosecuted her "to the bitter end" and used extraneous evidence to prejudice the jury against her. (doc. 79 at 24-26.) She also claims that ADA argued that she should be held without bond pending a psychological evaluation after a discussion with Attorney. (*Id*. at 11.) Taking Plaintiff's allegations as true, as the Court must, she has alleged that the prosecutors acted only in their adjudicative roles as a prosecutors. Because these acts of were taken during the course and scope of their duties as prosecutors, they are entitled to prosecutorial immunity for them. *See Imbler*, 424 U.S. at 423.

Plaintiff also alleges that the prosecutors are not immune for their actions regarding the alleged conspiracy to entrap her. (doc. 79 at 17.) Specifically, she claims that Deputy testified that one or both of the prosecutors "coached him as to how to entrap Plaintiff." (*Id*.) Even if true, Plaintiff has still not alleged facts showing that the prosecutors acted other than in their adjudicative roles as prosecutors. "Even allegations of conspiracy do not pierce [prosecutorial] immunity." *Weeks v. Shipman*, 70 F.3d 1267, 1267 (5th Cir. 1995) (per curiam); *see also Rykers*, 832 F.2d at 897 (citing *Morrison*, 761 F.2d at 248) (recognizing that prosecutors are absolutely immune even from malicious conduct); *Charleston*, 420 S.W.3d at 136–38 (same).

34

Because both prosecutors are entitled to prosecutorial immunity on Plaintiff's federal and state law claims against them, their motions to dismiss for failure to state a claim should be granted.[14]

## B.    42 U.S.C. § 1983

County, Judge Bosworth, Sheriff, Deputy, CI, Ex-husband, and Attorney move to dismiss Plaintiff's § 1983 claims against them. (docs. 39 at 4; 57 at 5; 69 at 29; 80 at 21-24; 82 at 23.)

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). It "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Id.* To state a claim, Plaintiff must allege facts that show (1) she has been deprived of a right secured by the Constitution and the laws of the United States and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

### 1.    Qualified Immunity

CI, Judge Bosworth, Sheriff, Deputy, and Attorney move to dismiss Plaintiff's federal claims against them based on qualified immunity. (*See* docs. 39 at 7; 69 at 18, 30, 66, 69-71; 80 at 2, 15-

---

[14] State, the judges, DA, and ADA also move to dismiss Plaintiff's claims against them for alleged criminal violations. (docs. 69 at 26-27; 80 at 19-20.) Throughout her complaint, Plaintiff alleges that Defendants violated various sections within Chapter 39 of the Texas Penal Code. (*See* doc. 79 at 11-12, 19, 21, 23, 30, 33, 39.) To the extent that Plaintiff's complaint may be liberally construed as attempting to bring a civil claim under a criminal statute, "[p]rivate citizens do not have the right to bring a private action under a federal criminal statute." *Sappore v. Arlington Career Inst.*, No. 3:09-CV-1671-N, 2010 WL 446076, at *2 (N.D. Tex. Feb. 8, 2010) (citing *Pierre v. Guidry*, 75 F. App'x 300, 301 (5th Cir. 2003) (per curiam)). They cannot enforce criminal statutes in a civil action. *See Florance*, 500 F. Supp. 2d at 626; *see, e.g., Algoe v. Texas*, Nos. 3:15-CV-1162-D, 3:15-CV-1204-D, 2016 WL 6902154, at *9 (N.D. Tex. Sept. 29, 2016), *adopted by* 2016 WL 6893682 (N.D. Tex. Nov. 21, 2016) (dismissing civil claim brought pursuant to criminal statutes). Any claims based on criminal statutes should also be dismissed for failure to state a claim.

17; 82 at 28.)[15]  County asserts that Plaintiff's federal claims against it should be dismissed based on the qualified immunity of the individual defendants.  (doc. 80 at 2, 17-18.)

A governmental employee who is sued under § 1983 or § 1985 may assert the affirmative defense of qualified immunity.  *See White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992) (for § 1983 litigation); *Little v. Texas Atty. Gen.*, No. 3:14-CV-3089-D, 2015 WL 1859457, at *2 (N.D. Tex. Apr. 23, 2015) (noting that "[qualified immunity] applies to claims brought under § 1985") (citing *Kinney v. Weaver*, 367 F.3d 337, 351–55 (5th Cir. 2004) (en banc); *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 556 (5th Cir. 1997)).  When qualified immunity is invoked, the plaintiff has the burden to show the inapplicability of an asserted qualified immunity defense.  *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam)).  To satisfy that burden on a motion to dismiss, the plaintiff must allege facts showing that a defendant violated his constitutional rights and that the violation was objectively unreasonable.  *Club Retro, L.L.C.*, 568 F.3d at 194; *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005).  It is well-settled that the burden does not shift to the plaintiff to demonstrate the inapplicability of the qualified immunity defense *until* the defendant has asserted it, however.  *See Club Retro, L.L.C.*, 568 F.3d at 194.

The Supreme Court has held that plaintiffs are not required to anticipate a qualified immunity defense by providing greater specificity in their initial pleadings.  *Crawford-El v. Britton*, 523 U.S. 574, 595 (1998).  The Fifth Circuit has held that a plaintiff is not required to "fully anticipate the defense in his complaint at the risk of dismissal under Rule 12."  *Schultea v. Wood*, 47 F.3d 1427,

---

[15] Judge McBroom, DA, and ADA also raise this argument.  (*See* doc. 80 at 2, 15-17.) Because Plaintiff's claims against them are subject to dismissal on the basis of judicial immunity or prosecutorial immunity, it is unnecessary to address their specific arguments here.

1430 (5th Cir. 1995) (en banc); *accord Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1995) (per curiam). This district has found that "after *Schultea*, it appears . . . that a Rule 12(b)(6) motion to dismiss on the ground of qualified immunity is no longer viable." *Johnson v. Anderson*, No. 4:03-CV-1355-Y, 2004 WL 1908212, at *1 n.1 (N.D. Tex. Aug. 2004) (citing *Schultea*, 47 F.3d at 1430); *accord McKay v. Dallas Indep. Sch. Dist.*, No. 3:06-CV-2325-L, 2007 WL 2668007, at *9 (N.D. Tex. Sept. 6, 2007) ("Courts in this district have denied without prejudice motions to dismiss on qualified immunity grounds when the motion is filed before the defendant has answered and actually raised the defense."); *Pena v. Dallas Cty., Hosp. Dist.*, No. 3:12-CV-439-N, 2013 WL 11299229, at *4 (N.D. Tex. June 26, 2013) ("In the Court's view, however, a defendant in the Fifth Circuit must assert qualified immunity in an answer, not a motion."); *see, e.g., Roberts v. Kirkpatrick*, No. 3:14-CV-812-N, 2016 WL 625055, at *3-4 (N.D. Tex. Jan. 25, 2016), *adopted by* 2016 WL 614020 (N.D. Tex. Feb. 16, 2016) (denying motion to dismiss on grounds of qualified immunity because the plaintiff was not required to anticipate a qualified immunity defense by providing greater specificity in his initial pleading). Because CI, Judge Bosworth, Sheriff, Deputy, and Attorney raise their qualified immunity defense in their motions to dismiss, their motions on this basis should be denied without prejudice. *See Pena*, 2013 WL 11299229, at *4 (denying a 12(b)(6) motion to dismiss on grounds of qualified immunity "without prejudice to refiling at the proper time") (citing *Giardina v. Lawrence*, 354 F. App'x 914, 915 (5th Cir. 2009)).

With regard to County, a municipality, such as a county, is not entitled to qualified immunity. *Estate of Sorrells v. City of Dallas*, 192 F.R.D. 203, 210 (N.D. Tex. 2000) (citing cases). County's motion to dismiss on this basis should therefore also be denied.

## 2. *Municipal Liability*

County contends that Plaintiff's § 1983 claims against it should be dismissed because she has not identified "an unconstitutional policy that caused her to be deprived of a federally protected right." (doc. 80 at 23-24.)

Municipalities, including counties and cities, may be held liable under § 1983. *Hampton Co. Nat'l Sur., LLC v. Tunica Cty.*, 543 F.3d 221, 224 (5th Cir. 2008). A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978); *Jones v. City of Hurst, Tex.*, No. 4:05-CV-798-A, 2006 WL 522127, at *3 (N.D. Tex. Mar. 2, 2006) (citing *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)). It is well-settled that a municipality cannot be liable under a theory of respondeat superior, however. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing cases). "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 [or section 1985] requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Id*. (citing *Monell*, 436 U.S. at 694); *see also Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010); *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005); *Jones*, 2006 WL 522127, at *3 (citing *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 532–33 (5th Cir. 1996)).

"Official policy" is defined as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well

38

> settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam); *accord Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). Where a policy is facially constitutional, a plaintiff must demonstrate that it was promulgated with deliberate indifference to known or obvious consequences that constitutional violations would result. *Piotrowski*, 237 F.3d at 579–80 & n.22; *accord Peterson v. City of Fort Worth*, 588 F.3d 838, 849–50 (5th Cir. 2009), *cert. denied*, 562 U.S. 827 (2010). "Deliberate indifference of this sort is a stringent test, and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability." *Piotrowski*, 237 F.3d at 579 (citation omitted) (stressing that "*Monell* plaintiffs [need] to establish both the causal link ('moving force') and the City's degree of culpability ('deliberate indifference' to federally protected rights)").

"The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)); *accord Piotrowski*, 237 F.3d 578-79. "[A] complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (citation omitted). In *Spiller*, the Fifth Circuit found the allegation that "[an officer] was acting in compliance with the municipality's customs, practices or procedures" insufficient to plead municipal liability. *Spiller*, 130 F.3d at 167. It also found that an assertion that several policies "led to" unspecified

39

"unconstitutional arrests and confinements," and that a departmental policy of "engag[ing] in conduct toward African American citizens without regard to probable cause to arrest" were too vague and conclusory to support alleged municipal liability under *Monell*. *Id*.

In addition, a single incident is insufficient to infer an official policy or custom. *See World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753–54 (5th Cir. 2009); *Pineda*, 291 F.3d at 329; *Piotrowski*, 237 F.3d at 581; *see also Hester v. Dallas Cty. Jail*, No. 3:11–CV–3099–B–BH, 2012 WL 1430539, at *3 (N.D. Tex. Mar. 6, 2012), *adopted by* 2012 WL 1437747 (N.D. Tex. Apr. 25, 2012) ("His single alleged incident is insufficient to infer that Dallas County has an official customary policy or custom of failing to protect inmates at the county jail.").

Here, Plaintiff's second amended complaint alleges that it is County's policy to: (1) remove children from a parent's custody "without proper notice and without opportunity to be heard", (2) deny bond to imprisoned individuals for an extended amount of time, (3) require released individuals to wear GPS locators, (4) prevent an individual from earning a living, (5) deny access to an individual's children; (6) abuse female inmates; (7) entrap detainees; and (8) "prosecute everyone and anyone for anything . . . for nothing more than a money generating scheme to collect probation fees for Johnson County." (doc. 79 at 6, 16, 18, 24.)

The complaint does not identify a policy statement, ordinance, regulation, or decision that was officially adopted and promulgated by County's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority. (*See id*.) It merely describes Plaintiff's beliefs, makes sweeping conclusory statements, and only generally alleges that these actions constituted constitutional violations. (*See id*.) Like *Spiller*, mere assertions that individuals were "acting in compliance with the municipality's customs, practices or procedures" is insufficient to

40

plead municipal liability.  *See Spiller*, 130 F.3d at 167.

Because Plaintiff relies on vague generalities and conclusions, she has not sufficiently alleged an official policy or custom, which is a necessary element to municipal liability under *Monell*, and has therefore failed to nudge her claim across the line from conceivable to plausible. *See Twombly*, 550 U.S. at 555.  Her § 1983 claims against County should be dismissed for failure to state a claim.

### 3.    *§ 1983 Conspiracy*

Judge Bosworth, Sheriff and Deputy contend that Plaintiff has failed to state a § 1983 claim against them because she has not sufficiently pleaded the existence of a conspiracy and/or she has failed to allege a constitutional violation.  (docs. 69 at 27-29; 80 at 21-22.)

Plaintiff's specific allegations against these remaining defendants are centered on their alleged involvement in a scheme to entrap her into hiring a hitman to murder Ex-husband.  (*See* doc. 79 at 11-12, 17-19, 20-21, 26, 29, 33, 36.)  She alleges that Judge Bosworth helped begin the entrapment conspiracy.  (doc. 79 at 12.)  She claims that Sheriff: (1) placed her in solitary confinement in order to diminish her cognitive ability and make her more susceptible to the entrapment scheme; (2) created a defamatory lie regarding the entrapment scheme in order to exclude her from his deposition; (3) attempted to "bootstrap" the entrapment scheme into her wrongful death case; and (4) ordered Deputy to create, and assisted him in creating, a narrative report about the alleged entrapment scheme.  (*Id*. at 11-12, 18-19, 33, 36.)  She asserts that Deputy: (1) prepared CI to record the attempt to entrap her; (2) visited her home after she was released and posed as a hitman while offering to murder Ex-husband; (3) lied under oath while testifying about the entrapment attempt during the sentencing phase of her criminal trial; and (4) wrote a narrative

report about the alleged entrapment scheme containing false statements.  (*Id*. at 12, 17-18, 20-21, 26.)  Based on these allegations, her § 1983 claims against these remaining defendants are liberally construed as alleging a conspiracy to violate her constitutional rights under the First, Fourth, Fifth, Sixth, or Fourteenth Amendments by entrapping her into the alleged murder-for-hire scheme.

A plaintiff may assert a conspiracy claim under § 1983.  *See Golla v. City of Bossier City*, 687 F. Supp. 2d 645, 662 (W.D. La. 2009) (citing *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995)) (quotations omitted).  To state a conspiracy claim under § 1983, a plaintiff must allege facts to support "(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."  *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds as recognized by Martin v. Thomas*, 973 F.2d 449, 455 (5th Cir. 1992).

### a.    Agreement

Judge Bosworth asserts that Plaintiff has failed to allege specific facts to show an agreement to violate her constitutional rights.  (doc. 69 at 27-29.)

In order to establish a § 1983 cause of action based upon conspiracy, a plaintiff must show that the defendants agreed to commit actions that violated his or her constitutional rights.  *Lewis v. Law-Yone*, 813 F. Supp. 1247, 1256 (N.D. Tex. 1993) (citing *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982)) (emphasis added).  A bald allegation that a conspiracy exists, unsupported by any factual allegations, is insufficient.  *Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir. 1987); *see also Green v. State Bar of Tex.*, 27 F.3d 1083, 1089 (5th Cir. 1994) (stating that a plaintiff is required to allege facts sufficient to suggest an agreement among one or more parties).

Here, Plaintiff asserts that Judge Bosworth had a private meeting with CI to set the

42

conspiracy to entrap her in motion, and after that meeting, CI met with Sheriff to plan the scheme. (doc. 79 at 12.)[16] As noted, her well-pleaded facts must be accepted as true and viewed in the light most favorable to her. *See Baker*, 75 F.3d at 196. Under this standard, although she does not expressly allege an agreement between Judge Bosworth and CI to deprive her of her constitutional rights, she has alleged facts sufficient to suggest that there was an agreement between them. The motion to dismiss this claim on this ground should therefore be denied.

### b. Constitutional Violation

Judge Bosworth, Sheriff, and Deputy contend that Plaintiff has failed to plead a constitutional violation. (docs. 69 at 29; 80 at 21-22.)

Section 1983 does not provide a cause of action for conspiracy to deny civil rights unless there is an actual violation of civil rights. *See Hale*, 45 F.3d at 920. In *Stokes v. Gann*, the Fifth Circuit relied on decisions of other Circuits to establish that "entrapment is not a constitutional violation" and cannot be the basis for a § 1983 claim. 498 F.3d 483, 485 (5th Cir. 2007) (citing cases); *see also Reyes v. Unknown Agent (Badge 101)*, No. 09cv69 MCA/WDS, 2010 WL 11549184, at *5 (D. N.M. Jan 13, 2010) (recognizing that federal circuits have concluded that entrapment is not a constitutional violation) (citing cases). Entrapment may constitute a substantive due process violation, however, where conduct is "so outrageous" that it "shocks the conscience." *Stokes*, 498 F.3d at 485 (quotations omitted).

As alleged, Judge Bosworth, Sheriff, and Deputy's actions in conspiring to entrap Plaintiff into entering a "murder-for-hire" scheme, "even to the extent that they constituted entrapment under state law, do not by themselves constitute a violation of [her] constitutional right[s]" and cannot

---

[16] To the extent Plaintiff relies on any other actions by Judge Bosworth, as discussed, judicial immunity bars her claims.

serve as a basis for her § 1983 claims against them.  *Stokes*, 498 F.3d at 485.  The unsuccessful

entrapment attempt against Plaintiff, as alleged, does not appear to constitute outrageous conduct

that "shocks the conscience."  *See Stokes*, 498 F.3d at 485 ("Deprivations of liberty caused by 'the

most egregious official conduct' may violate the Due Process Clause.").  Accordingly, she has not

established a constitutional violation committed in furtherance of the alleged conspiracy against her.

Because Plaintiff has not established that Judge Bosworth, Sheriff, and Deputy committed

acts that violated her constitutional rights, her § 1983 conspiracy claims against them should be

dismissed for failure to state a claim.  *See Florance*, 500 F. Supp. 2d at 626 (dismissing a § 1983

conspiracy claim under Rule 12(b)(6) for failure to establish a constitutional violation).

### 4.    *State Action*

CI, Ex-husband, and Attorney argue that Plaintiff's § 1983 claims against them should be

dismissed for failure to state a claim because she has not sufficiently alleged state action.  (docs. 39

at 4; 57 at 5; 82 at 23.)

Here, Plaintiff asserts that although CI, Attorney, and Ex-husband are not state actors, they

acted in a "joint action" with state actors to violate her constitutional rights.  (doc. 79 at 28-29.)  She

alleges that CI "act[ed] under color of law as an agent for" the county defendants to "try to convince

[her] to solicit the murder of [Ex-husband]."  (*Id*. at 11-12.)  She also generally alleges that all three

individuals were involved in the alleged conspiracy to "persecute and oppress her, and deny her

justice in any court in Johnson County."  (*Id*. at 1-2, 11, 19-22, 29.)

In *Priester v. Lowndes Cty.*, 354 F.3d 414 (5th Cir. 2004), *cert. denied*, 543 U.S. 829 (2004),

the Fifth Circuit explained that "[f]or a private citizen . . . to be held liable under section 1983, the

plaintiff must allege that the citizen conspired with or acted in concert with state actors."  *Id*. at 420

(citing *Mylett v. Jeane*, 879 F.2d 1272, 1275 (5th Cir. 1989) (per curiam)). The plaintiff must allege: (1) an agreement between the private and public defendants to commit an illegal act and (2) a deprivation of constitutional rights. *Priester*, 354 F.3d at 420; *see also Avdeef*, 616 F. App'x at 676. Allegations that are merely conclusory, without reference to specific facts, will not suffice. *Id.* (citing *Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986) (per curiam)).

Plaintiff's allegations of "joint action" are conclusory and devoid of any specific facts to support an allegation that an agreement existed between CI, Attorney, and Ex-husband and the state actor defendants to commit an illegal act. Accordingly, Plaintiff has failed to sufficiently allege that these defendants conspired with a state actor, and her § 1983 claims against them should be dismissed for failure to state a claim.

## C.   42 U.S.C. § 1985

CI moves to dismiss Plaintiff's § 1985 claim for failure to assert that his actions were motivated by "racial or other class-based invidious discriminatory animus." (doc. 39 at 11.)

Section 1985 "creates a private civil remedy for three prohibited forms of conspiracy to interfere with civil rights under that section." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 149 (5th Cir. 2010). Although Plaintiff does not specify the subsection upon which she relies, (*see* doc. 79 at 31), her claims may be liberally construed as arising under the second clause of § 1985(2) and § 1985(3).[17]

---

[17] Plaintiff does not appear to allege any facts that invoke § 1985(1), which deals with preventing a federal officer from performing his or her duties. *See Kush v. Rutledge*, 460 U.S. 719, 724 (1983). Nor does she appear to allege any facts that invoke the first clause of § 1985(2), which "prohibits conspiracies to deter witnesses from attending court or testifying, punishing witnesses who have so attended or testified, or injure jurors." *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 687 n.6 (5th Cir. 2010). This clause has been read as protecting any party, witness, or juror from intimidation regardless of any racial animus on the part of the defendant. *Montoya*, 614 F.3d at 149 (citing *Kush v. Rutledge*, 460 U.S. 719, 723–27 (1983)).

45

The second clause of § 1985(2) "prohibits conspiracies to deny any citizen equal protection of the laws." (*See* doc. 79 at 31.) *see* 42 U.S.C. § 1985(2).  Subsection 3 prohibits a conspiracy to deprive any person or class of persons of the equal protection of the law, or of equal privileges and immunities under the law. 42 U.S.C. § 1985(3).  To state a claim under § 1985(3), Plaintiff must allege: (1) a conspiracy of two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or deprives her of a right or privilege of a United States citizen.  *See Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994); *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757 (5th Cir. 1987).  She must further allege that the conspirators were motivated by her race.  *Horiast v. Doctor's Hosp. Of Opelousas*, 255 F.3d 261, 271 (5th Cir. 2001).  Since the equal protection language in the second clause of § 1985(2) parallels the equal protection language in § 1985(3), the race or class-based animus requirement of § 1985(3) also applies to claims under the second clause of § 1985(2).  *See Daigle v. Gulf State Utils. Co., Local Union No. 2286*, 794 F.2d 974, 979 (5th Cir. 1986) (citing *Kimble v. D.J. McDuffy, Inc.*, 648 F.2d 340, 346 (5th Cir. 1981) (en banc)).

Here, Plaintiff makes conclusory allegations of class-based discrimination, but she does not provide any factual support to show that the alleged conspiracy was motivated by race or class-based animus.  (*See* doc. 79.)  Her § 1985 claim is therefore subject to dismissal for failure to state a claim. *See Payne v. Universal Recovery, Inc.*, No. 3:11-CV-1672-D, 2011 WL 7415414 at *8 (N.D. Tex. Dec. 7, 2011), *adopted by* 2012 WL 593483 (N.D. Tex. Feb. 17, 2012) (dismissing § 1985 claim under Rule 12(b)(6) for failure to show that the alleged conspiracy was motivated by race or

class-based animus).[18]

### D.    State Law Claims

All Defendants, except Ex-husband,[19] also move to dismiss Plaintiff's state law tort claims against them.  (*See* docs. 39 at 12; 69 at 64; 80 at 31; 82 at 25; *see* doc. 57.)[20]

Under § 1367(a), federal courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  In essence, § 1367(a) grants the courts the "power to hear a state law claim under pendent or supplemental jurisdiction if (1) the federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleus of operative fact."  *McKee v. Texas Star Salon, LLC*, No. 3:15-CV-1162-D, 2007 WL 2381246, at *4 (N.D. Tex. Aug. 21, 2007) (citations omitted); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1996).

When all federal claims are dismissed prior to trial, the general rule in this circuit is to decline exercising jurisdiction over the remaining state law claims.  *LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir. 1986); *see also* 28 U.S.C. § 1367(c)(3).  This rule is "neither mandatory nor absolute."  *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002)

---

[18]  Although the remaining defendants do not move to dismiss this claim on this basis, as discussed more fully below, a court may *sua sponte* dismiss a plaintiff's claims for failure to state a claim as long as the plaintiff has notice and an opportunity respond.  *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (citing *Shawnee Int'l., N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984)).  Plaintiff's § 1985 claims against them may therefore be *sua sponte* dismissed for the same reason as the claim against CI.

[19]  Although Ex-husband does not specifically move to dismiss Plaintiff's state law claims, he does assert that he is protected from her defamation and libel claims based on the "judicial proceedings privilege."  (doc. 57 at 8.)

[20]  Because Plaintiff's state law claims against State, all judges (except for claims against Judge Bosworth based on his alleged meeting with CI), and the prosecutors, are barred by Eleventh Amendment immunity, judicial immunity, witness immunity, and/or prosecutorial immunity, their remaining grounds for dismissal of Plaintiff's state law claims against them are not addressed.

(citation omitted).  Rather, district courts are given wide discretion in deciding whether to exercise jurisdiction under such circumstances.  *See Heaton v. Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000); *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993); *see also United Mine Workers*, 383 U.S. at 726 ("[P]endent jurisdiction is a doctrine of discretion, not of [a] plaintiffs right.").  In exercising this discretion, courts should consider issues of judicial economy, convenience, and fairness to the litigants.  *LaPorte Constr. Co.*, 805 F.2d at 1257.  However, "no single factor is dispositive."  *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008).

Here, the factors weigh in favor of retaining jurisdiction over Plaintiff's state law claims. Her state law claims arise from the same "common nucleus of operative facts" as her federal claims, namely, Defendants' alleged conspiracy to deprive her of her constitutional rights and entrap her into engaging in a murder-for-hire scheme.  (*See* doc. 79.)  Requiring Plaintiff to litigate her claims in state court would "necessarily require consideration by two distinct courts of the same operative fact[s]" and the "same legal issues."  *See McKee*, 2007 WL 2381246, at *4.  Given Plaintiff's failure to state a claim for relief against Defendants in federal court, or otherwise show that a genuine controversy exists between the parties, allowing her to file suit in state court would impose unnecessary expenses on the court system and the parties involved.  *See McCall v. Peters*, No. CIV.A. 3:00–CV–2247–D, 2003 WL 21488211, at *12 (N.D. Tex. May 12, 2003), *aff'd*, 108 F. App'x 862 (5th Cir. 2004) (in determining whether to exercise pendent or supplemental jurisdiction, the court may consider factors such as the amount of time and resources spent adjudicating the case). Because all three factors weigh in favor of retaining jurisdiction over Plaintiff's state law claims, the Court should exercise supplemental jurisdiction and review the claims on the merits.

### 1. Election of Remedies

State and County move to dismiss all of Plaintiff's state law claims against Judge Bosworth, Sheriff, and Deputy, citing her election of remedies under Tex. Civ. Prac. & Rem. Code § 101.106(e), (f).[21] (docs. 69 at 24 n.19, 64-65; 80 at 31.)

Under the election-of-remedies provisions of the TTCA, a plaintiff who sues under the TTCA must elect between suing a governmental unit and suing an employee of that unit. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106; *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 462 (5th Cir. 2010). If he sues the governmental unit, the suit "constitutes an irrevocable election" by him and "bars any suit or recovery by [him] against any individual employee of the governmental unit regarding the same subject matter." Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a). The TTCA specifically provides that:

> (e)    If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees *shall immediately be dismissed* on the filing of a motion by the governmental unit.

> (f)    If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee *shall be dismissed* unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

*Id*. at § 101.106(e), (f) (emphasis added). "Although recognized as a harsh grant of immunity, [§ 101.106] serves the purpose of protecting government employees from individual liability for acts or omissions where a claim based upon the same facts is made against their employers." *Jackson v. Dallas Indep. Sch. Dist.*, No. 3:98-CV-1079-D, 1999 WL 58846, at *5 (N.D. Tex. Feb. 1, 1999)

---

[21] It appears that Plaintiff only asserts claims under the TTCA for false imprisonment and intentional infliction of emotional distress against County. (*See* doc. 79 at 30, 37-39.)

(internal quotation marks and citation omitted), *aff'd*, 232 F.3d 210 (5th Cir. 2000) (unpublished table decision) (per curiam); *accord Dorward v. Ramirez*, 2009 WL 2777880, at *14 (citing *Jackson*, 1999 WL 58846, at *5). The election-of-remedies provisions in § 101.106 cover all state tort claims, whether intentional or negligent, and whether brought under common law or the TTCA. *Bustos*, 599 F.3d at 463-64.

Here, Plaintiff alleges claims under the TTCA and state common law against governmental employees as well as against their employing governmental units, regarding the same subject matter. (*See* doc. 79 at 30, 33-35, 37-39.) By suing State and County, she has made an irrevocable election of remedies and is barred from suing Judge Bosworth, Sheriff, and Deputy regarding the same subject matter.[22] *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a). Because State and County moved to dismiss Plaintiff's state law tort claims against the individual defendants, these claims against them must be dismissed. *See id*. at § 101.106(e).

### 2.    TTCA

County moves to dismiss Plaintiff's state law tort claims under the TTCA because it does not provide a waiver of immunity for intentional tort claims. (docs. 80 at 32-33.) Plaintiff only asserts claims for false imprisonment and intentional infliction of emotional distress against County. (*See* doc. 79 at 30; 37-39.)

"A county . . . as a political subdivision of the State, falls within the parameters of the TTCA. *Harris Cty., TX v. Cabazos*, 177 S.W.3d 105, 109 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3)(B)). As discussed above in relation to

---

[22] Although Plaintiff asserts several of her state law tort claims against all Defendants, the named defendants are the only remaining governmental employees against whom her claims have not been dismissed based on immunity. (*See* doc. 79.)

State's motion to dismiss, the TTCA's limited waiver of sovereign immunity expressly does not apply to claims for "*false imprisonment, or any other intentional tort*." Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2) (emphasis added). County is therefore immune from these claims. *See id.*; *see also Swiat*, 2011 WL 2559637, at *5; *Jackson*, 154 F. Supp. 2d at 921. Plaintiff's state law claims for false imprisonment and intentional infliction of emotional distress against County should be dismissed for failure to state a claim. *See Jackson*, 154 F. Supp. 2d at 920 (dismissing TTCA claims against a sheriff and county under Rule 12(b)(6) because the TTCA's waiver of immunity does not extend to intentional torts).

### 3.    *False Imprisonment*

Remaining defendants CI and Attorney move to dismiss Plaintiff's false imprisonment claim against them for failure to plead sufficient facts in support. (docs. 39 at 13; 82 at 25 n.7.)

"To prevail on a claim of false imprisonment, a plaintiff must show (1) willful detention by the defendant; (2) without plaintiff's consent; and (3) without authority of law." *Gordon v. Neugebauer*, 57 F. Supp. 3d 766, 780 (N.D. Tex. 2014) (citing *Wal–Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002)).

Here, Plaintiff's claim is premised on her imprisonment for carrying a gun into a prohibited area and on her bond conditions for that offense. (doc. 79 at 37-38.) She alleges no facts to show that either CI or Attorney willfully detained her or were involved in her detention for that offense in any way, however. (*See id.*) Because she fails to allege facts showing that CI or Attorney willfully detained her, she has failed to state a claim upon which relief can be granted. CI and

Attorney's motions to dismiss this claim should therefore be granted.[23]

### 4.    *Intentional Infliction of Emotional Distress*

Remaining defendants CI and Attorney also move to dismiss Plaintiff's claim for intentional infliction of emotional distress for failure to state a claim.  (docs. 39 at 14; 82 at 22-23, 25 n.7.)

Under Texas law, the elements to a infliction of emotional distress claim are: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the plaintiff's emotional distress was severe.  *Geske v. Bank of Am. Home Loans*, No. 3:11–CV–2220–M-BK, 2011 WL 6968317, at *4 (N.D. Tex. Dec. 12, 2011), *adopted by* 2012 WL 75752 (N.D. Tex. Jan. 9, 2012) (citing *Tex. Farm Bureau Mut. Ins. Co. v. Sears*, 84 S.W.3d 604, 610 (Tex. 2002)).

"Whether a defendant's conduct is 'extreme and outrageous' is a question of law." *Id.* (quoting *Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001)).  "The mere fact that a defendant's conduct is tortious or otherwise wrongful does not, standing alone, necessarily render it "'extreme and outrageous.'" *Bradford*, 48 S.W.3d at 758.  Extreme and outrageous behavior by the defendant must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)).

Plaintiff alleges that the "defendants acted intentionally and with malice, their conduct has been extreme and outrageous; and has caused [her] severe emotional distress." (doc. 79 at 39.)  She appears to rely on her allegations that these defendants were involved in the alleged conspiracy

---

[23] As noted, a court may *sua sponte* dismiss claims on its own motion under Rule 12(b)(6) for failure to state a claim as long as the plaintiff has notice and an opportunity to respond.  *See Carroll*, 470 F.3d at 1177 (citing *Shawnee Int'l., N.V.*, 742 F.2d at 236).  Although Ex-husband does not move to dismiss this claim against him, it may *sua sponte* be dismissed for the same reasons as against CI and Attorney.

against her. (*Id.*) She has provided only conclusory allegations regarding her claim for intentional infliction of emotional distress, and she has not identified any conduct by CI or Attorney that she contends was extreme and outrageous, however. (*See id.*) She only broadly states that all Defendants' conduct was extreme and outrageous. (*See id.*) Because she has not identified extreme and outrageous conduct by CI and Attorney, their motions to dismiss this claim should be granted. *See Sanders v. Shulze*, No. 3:15-CV-89-N (BH), 2015 WL 5547630, at *8 (N.D. Tex. Aug. 31, 2015), *adopted by* 2015 WL 5566250 (N.D. Tex. Sept. 21, 2015) (dismissing a claim for intentional infliction of emotional distress where the plaintiff did not specifically identify extreme and outrageous conduct by the defendants).[24]

### 5.    *Invasion of Privacy*

Attorney asserts that Plaintiff fails to state a claim that he invaded her privacy by disclosing the contents of DA's criminal investigative file, which included CI's and Deputy's narrative reports about the alleged entrapment scheme, during the child custody proceedings. (doc. 82 at 25-28.)

Texas law recognizes multiple forms of invasion of privacy, each with separate elements. *Crain v. Hearst Corp.*, 878 S.W.2d 577, 579–80 (Tex. 1994). There are "three distinct injuries under the tort of invasion of privacy: (1) intrusion on seclusion, (2) public disclosure of private facts, and (3) appropriation of name or likeness." *James v. Dallas Police Dep't*, No. 3:12-CV-457-N-BN, 2013 WL 607154, at *4 (N.D. Tex. Feb. 4, 2013), *adopted by* 2013 WL 607153 (N.D. Tex. Feb. 19, 2013) (citing *Cain*, 878 S.W.2d at 578).

Because Plaintiff's claim relates to the release of narrative reports regarding the alleged entrapment scheme, which she contends contains private information, it appears that she is alleging

---

[24] Although Ex-husband also does not move to dismiss this claim against him, it may likewise be *sua sponte* dismissed for the same reasons as against CI and Attorney.

"public disclosure of private facts."  (*See* doc. 79 at 33.)  The elements of public disclosure of private facts are: "(1) publicity was given to matters concerning one's personal life, (2) publication would be highly offensive to a reasonable person of ordinary sensibilities, and (3) the matter publicized is not of legitimate public concern."  *Watkins v. Cornell Co., Inc.*, No. 3:11-CV-260-M-BN, 2013 WL 1914713, at *8 (N.D. Tex. Mar. 15, 2013), *adopted by* 2013 WL 1926375 (N.D. Tex. May 8, 2013) (citing *Indus. Found. of the South v. Texas Indus. Accident Bd.*, 540 S.W.2d 668, 682 (Tex. 1976)).  "Publicity means that a matter is communicated to the public at large or disseminated to so many people that it becomes public knowledge."  *Id*.

Plaintiff relies on the Texas Public Information Act (PIA) to assert that the narrative reports contained private information that should not have been released.  (doc. 79 at 33.)  *See* Tex. Gov't Code §§ 552.101 & 108(2).[25]  Section 552.007 expressly provides that Chapter 552 "does not prohibit a governmental body or its officer for public information from voluntarily making part or all of its information available to the public, unless the disclosure is expressly prohibited by law or the information is confidential under law", however.  Tex. Gov't Code § 552.007.  Sections 552.101 and 552.108 provide permissive exceptions only.  *See Birnbaum v. All. of Am. Insurers*, 994 S.W.2d 766, 776 (Tex. App.—Austin, 1999), *abrogated on other grounds by In re Bass*, 113 S.W.3d 735 (Tex. 2003) (finding that another exception within Chapter 552 was "a permissive exception only."). Because these sections do not expressly prohibit disclosure or make the information from the narrative reports confidential at law, it was not improper for DA's office to release the narrative

---

[25] These sections provide exceptions for the availability of public information.  Section 552.101 provides that "information considered to be confidential by law, either constitutional, statutory, or by judicial decision" is excepted from availability.  Tex. Gov't Code § 552.101.  Section 552.108(2) provides that "[i]nformation held by a law enforcement agency or prosecutor that deals with the detection, investigation, or prosecution of a crime . . . in relation to investigation that did not result in conviction or deferred adjudication" is excepted from availability. Tex. Gov't Code § 552.108(2).

reports to Attorney, as Plaintiff contends.  (doc. 79 at 33); *see id.*

Even assuming the narrative report contained private information that should not have been released, a claim for public disclosure of private facts also requires that publicity be given to the matters concerning one's personal life.  *Indus. Found. of the South*, 540 S.W.2d at 683 ("this branch of tort also requires that publicity be given to the private affairs of the individual.").  Plaintiff appears to assert that the report was publicized because: (1) Attorney received the narrative report and "sought to admit it in the civil case, where it did not belong", and (2) Attorney published the report to a children's counselor and a social worker, "and continues to this day to hand it out like candy." (doc. 79 at 33-34.)  These speculative and conclusory allegations do not show that Attorney communicated the information contained in the narrative report "to the public at large or disseminated [it] to so many people that it [became] public knowledge."  *See Watkins*, 2013 WL 1914713, at *8 (citing *Indus. Found. of the South*, 540 S.W.2d at 683–84).

Because Plaintiff has not met the first element, Attorney's motion to dismiss this claim should be granted.[26]

### 6.    *Defamation and Libel*[27]

CI asserts that Plaintiff's defamation claim against him based on his narrative report should be dismissed for failure to state a claim because she has not established that he published a written statement about her.  (doc. 39 at 12-13.)  Attorney and Ex-husband assert that Plaintiff's claim should be dismissed because it is barred by immunity and privilege, and alternatively, she failed to

---

[26] Plaintiff's claim against Ex-husband may be *sua sponte* dismissed for the same reasons as against Attorney despite his failure to move to dismiss it.

[27] Libel is a type of defamation that is written, as opposed to slander, which is spoken defamation.  *See Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909, 912 (Tex. 1942).  Because libel is a type of defamation, these claims will be analyzed together.

plead sufficient facts to support her claim.  (docs. 57 at 8; 82 at 25, 28-31.)

"Defamation is a false statement about a person, published to a third party, without legal excuse, which damages the person's reputation." *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1161 (5th Cir. 2006) (citing *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.—Waco 2005, no pet.)).  "Defamatory statements are 'published' if they are communicated to a third party capable of understanding their defamatory connotation and in such a way that the third party did so understand." *Crouch v. J.C. Penney Corp., Inc.*, 564 F. Supp. 2d 642, 646 (E.D. Tex. 2008), *aff'd*, 337 F. App'x 399 (5th Cir. 2009).  "A statement is defamatory if it exposes a person to 'public hatred, contempt or ridicule, or financial injury or if it impeaches any person's honesty, integrity, virtue, or reputation.'" *Shaunfield v. Bank of Am.*, No. 3:12-CV-3859-B, 2013 WL 1846885, at *3 (N.D. Tex. Apr. 24, 2013) (citing *Double Diamond, Inc. v. Van Tyne*, 109 S.W.3d 848, 854 (Tex. App.—Dallas 2003, no pet.)); *see also* Tex. Civ. Prac. & Rem. Code § 73.001.  Generally, a plaintiff who is a private individual, such as Plaintiff, must show that the defendant acted negligently regarding the truth of the defamatory statement at the time that he published it.  *Nasti v. CIBA Specialty Chemicals Corp.*, 492 F.3d 589, 595–96 (5th Cir. 2007) (citing *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)).

Texas law provides an absolute privilege to parties and witnesses who participate in judicial proceedings from having to answer civil actions in damages for libel or slander.  *See Runge v. Franklin*, 72 Tex. 585, 10 S.W. 721, 723 (1889); *Belo & Co. v. Wren*, 63 Tex. 686 (1884).  The Texas Supreme Court describes this scope of the privilege to mean "[a]ny communication, oral or written, uttered or published in the due course of a judicial proceeding is absolutely privileged and cannot constitute the bas[is] of a civil action in damages for slander or libel." *Reagan v. Guardian*

*Life Ins. Co.*, 140 Tex. 105, 166 S.W.2d 909, 912 (1942).  The absolute privilege extends to "any statement made by the judge, jurors, counsel, parties or witnesses, and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or other papers in the case." *James v. Brown*, 637 S.W.2d 914, 916–17 (Tex. 1982).

Plaintiff appears to assert, and CI appears to concede, that CI authored one of the narrative reports upon which her claim against him is based.  (*See* docs. 39 at 13; 79 at 20, 34.)  She contends that CI's narrative report was about his "inside-the-jail attempt to entrap [her]" and "falsely state[d] that Plaintiff enthusiastically agreed to the murder-for-hire scheme . . . ."  (doc. 79 at 20-21, 34.)  However, Plaintiff does not assert that CI published the report to a third party.  (*see* doc. 79); *see also Karage v. First Advantage Corp.*, No. 3:09-CV-604-M, 2010 WL 1062601, at *1 (N.D. Tex. Mar. 22, 2010) ("a plaintiff must prove that the defendant (1) published (2) a false defamatory statement . . . (3) to a third party").  She only asserts that Attorney, Ex-husband, Sheriff, and DA published CI's narrative report.  (doc. 79 at 34.)  Because the publication element is absent here as to CI, his motion to dismiss this claim should be granted.

Regarding Attorney and Ex-husband, Plaintiff asserts that they published the narrative reports by introducing them into evidence during her child custody case and showing them to other individuals who appear to have been involved in the child custody case.  (*See* doc. 79 at 21-22, 33-34.)  Because Ex-husband was a party in that case, and Attorney served as his counsel, their use of the narrative report in the civil proceeding "is absolutely privileged and cannot constitute the basis of a civil action" for libel against him.  *Reagan*, 166 S.W.2d at 912.  Moreover, although Plaintiff asserts that Attorney and Ex-husband published the report "outside of a judicial context", she pleads

no facts in support of her claim, so this conclusory statement does not "raise [her] right to relief above the speculative level." (doc. 79 at 34.) *Twombly*, 550 U.S. at 555. Plaintiff's defamation and libel claims against Attorney and Ex-husband[28] should be dismissed for failure to state a claim.

## IV. *SUA SPONTE* DISMISSAL

Plaintiff also sues John Does 1-5 and Jane Does 1-5. (doc. 79 at 1, 4.)

A court may *sua sponte* dismiss on its own Rule 12(b)(6) motion for failure to state a claim as long as the plaintiff has notice and an opportunity to respond. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (citing *Shawnee Int'l., N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984)). Plaintiff receives notice and an opportunity to respond based on "[t]he fourteen-day time frame for filing objections to a recommended dismissal . . . ." *Fantroy*, 2012 WL 6764551, at *7 (citing *Ratcliff*, 2008 WL 4500321, at *3 n.1).

A civil rights action may be initiated against unidentified defendants when their true names are not yet known but may be learned. *See Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 390 n.2 (1971) (noting that the district court ordered the complaint served upon the agents that arrested the plaintiff according to the records of the United States Attorney). "Although the use of a 'John Doe' is disfavored, it serves the legitimate function of giving a plaintiff the opportunity to identify, through discovery, unknown defendants." *Green v. Doe*, 260 F. App'x 717, *3 (5th Cir. 2007), *citing Colle v. Brazos County*, 981 F.2d 237, 243 n.20 (5th Cir. 1993); *see also Murphy v. Kellar*, 950 F.2d 290, 293 (5th Cir. 1992) (in certain circumstances, a plaintiff should be given the opportunity through discovery to discover the identities of unnamed defendants); *Hittle v. City of*

---

[28] Because it is recommended that all of Plaintiff's claims against Ex-husband be dismissed for failure to state a claim, her motion to disqualify opposing counsel for Ex-husband should be **DENIED as moot**. (doc. 64.)

*Garland*, 1 F.3d 1236 (5th Cir. 1993) (unpublished opinion) (same).  Discovery is warranted when it is possible that a plaintiff could identify unknown defendants by physical descriptions, partial names or nicknames, position, date, time and/or specifics of the incident, or from duty rosters and personnel records, records available to the defendants' representative, or known defendants who were participants in the same incident as the unknown defendant.  *See Murphy*, 950 F.2d at 293 (identities of unknown defendants for whom plaintiff provided physical descriptions, partial names and positions, could be determined from duty rosters and personnel records); *Green*, 260 F. App'x 717, at *2 (identity of unknown correctional officer could be determined based on physical description of officer on duty at time and place of incident); *Bivens*, 403 U.S. 390 n.2 (identities of officers who arrested defendant could be determined from U.S. Attorney's records); *Munz v. Parr*, 758 F.2d 1254 (8th Cir. 1985) (unknown defendant was named with known defendants).

Plaintiff's claims against John and Jane Does 1-5 may be dismissed because Plaintiff has not provided any identifying information about them by which their identities could be learned through discovery.  Nor has she alleged any actions by any unknown defendants that would provide a basis for identifying them or that would support any claim against them.   Her suit against these unknown defendants should therefore be *sua sponte* dismissed for failure to state a claim.

### V. OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted.  *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001).  Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a

court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. A *pro se* plaintiff may also obtain leave to amend his complaint in response to a recommended dismissal. *See Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at * 1 (N.D. Tex. Jan. 5, 2010); *Scott*, 2008 WL 398314, at *1. However, "[w]hen a plaintiff is given an opportunity to amend a complaint that fails to state a claim upon which relief can be granted, but refuses to do so, then the district court is justified in dismissing the complaint with prejudice." *Rodriguez v. U.S.*, 66 F.3d 95, 98 (5th Cir. 1995). Additionally, a court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Plaintiff has twice amended her complaint, and it appears she has alleged her best case. Furthermore, even if afforded another opportunity to amend, Plaintiff's claims against several Defendants are barred by immunity, and it does not appear that she can successfully state a claim under §§ 1983 or 1985. Any further opportunity to amend is unwarranted.

## X. RECOMMENDATION

Defendants' motions to dismiss should be **GRANTED**. Plaintiff's federal and state law claims against State and her federal claim for injunctive relief against the judges should be **DISMISSED without prejudice** for lack of subject-matter jurisdiction,[29] and her federal and

---

[29] State seeks attorneys' fees. (*See* doc. 69 at 1, 72.) In a suit to enforce § 1983, the court may, in its discretion, grant the prevailing party reasonable attorneys' fees and related expenses. See 42 U.S.C. § 1988(b). While a prevailing plaintiff in a § 1983 action is usually entitled to an award of fees under § 1988, "prevailing defendants cannot recover § 1988 fees without demonstrating that the plaintiff's underlying claim was frivolous, unreasonable or groundless." *Merced v. Kasson*, 577 F.3d 578, 595 (5th Cir. 2009) (citation omitted). To the extent that State seeks attorneys' fees, it may file a post-judgment request under Federal Rule of Civil Procedure 54(d)(2) that also complies with the applicable Local Civil Rules for the Northern District of Texas.

state law claims against the moving defendants should be **DISMISSED with prejudice** for failure to state a claim. Any remaining state law claims against Ex-husband and her claims against John Does 1-5 and Jane Does 1-5 should be *sua sponte* **DISMISSED with prejudice** for failure to state a claim, and "Plaintiff's Motion to Disqualify Opposing Counsel for [Ex-husband]" should be **DENIED as moot**.

      **SO RECOMMENDED** on this 13th day of February, 2018.

                  IRMA CARRILLO RAMIREZ
                  UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

      A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

                  IRMA CARRILLO RAMIREZ
                  UNITED STATES MAGISTRATE JUDGE